Opinion
 

 CALDECOTT, P. J.
 

 The People of the State of California filed a complaint for injunction, civil penalties, restitution and other equitable relief against defendants Columbia Research Corporation et al. Shortly thereafter, the state filed a motion for preliminary injunction. The superior court granted this motion and the preliminary injunction was issued. The appeal is from the order granting the preliminary injunction.
 

 I
 

 It is well settled that whether a preliminary injunction shall be granted rests largely with the discretion of the trial court. Its decision will not be reversed on appeal unless there is a clear showing of abuse of discretion.
 
 (Isthmian S. S. Co.
 
 v.
 
 Nat. Marine etc. Assn.,
 
 40 Cal.2d 433, 435 [254 P.2d 578], overruled on other grounds in
 
 Smyrniotis
 
 v.
 
 Local
 
 
 *610
 

 Joint Executive Bd.,
 
 64 Cal.2d 30, 40 [48 Cal.Rptr. 725, 409 P.2d 949];
 
 Oktanski
 
 v.
 
 Burn,
 
 138 Cal.App.2d 419, 422 [291 P.2d 954];
 
 Christopher
 
 v.
 
 Jones,
 
 231 Cal.App.2d 408, 412 [41 Cal.Rptr. 828].) In deciding the case at hand, this court is necessarily governed by settled rules on appeal. “[T]hus, in ascertaining whether the facts warrant an order granting a preliminary injunction, it is incumbent upon this court to view such facts most favorable to the plaintiff [citation]; and in considering an order involving the decision of a question of fact, made on affidavits,[
 
 1
 
 ] all conflicts must be resolved in favor of the prevailing party [citation], and all reasonable inferences which are to be drawn must be in support of the trial court’s order [citation].”
 
 (Family Record Plan, Inc.
 
 v.
 
 Mitchell,
 
 172 Cal.App.2d 235, 239 [342 P.2d 10];
 
 Metro-Goldwyn-Mayer, Inc.
 
 v.
 
 Lee,
 
 212 Cal.App.2d 23, 27-28 [27 Cal.Rptr. 833]; see also
 
 Griffith Co.
 
 v.
 
 San Diego Col. for Women,
 
 45 Cal.2d 501, 508-509 [289 P.2d 476, 47 A.L.R.2d 1349].)
 

 Columbia contends on appeal that the trial judge granted the preliminary injunction without foundation in either law or fact. Legally, an injunction can issue to prevent false or misleading advertising and unlawful, unfair or fraudulent business practices. Such an injunction is authorized by Business and Professions Code section 17535 and Civil Code section 3369. The question remaining is whether there was sufficient evidence to support the trial court’s decision to grant the preliminary injunction. Columbia argues that there was insufficient evidence to justify any of the restraints imposed on its activities in the 10 paragraphs of the preliminary injunction. However, a review of the record indicates that the trial court did not abuse its discretion in granting the preliminary injunction.
 

 (First) The introductory language in Columbia’s sales letter (e.g., “Congratulations: Are you in for a Big Jackpot Surprise!!! It is indeed my pleasure to inform you that your name has been selected by our computer and you are to receive the following”) could easily imply to a consumer that he is to receive a gift, award or prize. Since the only
 
 *611
 
 disclaimer to this implication is in much smaller print on the fourth page of the materials, it is a reasonable inference that many consumers will not see the disclaimer. Business and Professions Code section 17537 specifically proscribes the notification of any person as part of an advertising scheme that he has won a prize and that, as a condition of receiving the prize, he must purchase goods or services.
 

 (Second) Although the promotional letters stress the fact that the person receiving the letter has been specially selected they do not explain the basis for selection. One of the letters states “the computer selected
 
 your name
 
 among others, as the lucky person to receive this invitation— based on your geographic location, interests, etc.” This, however, does not overcome the initial impression to the consumer that he falls within a small category of specially selected people. Yet, the evidence indicates that similar offers have been made to hundreds of thousands of people across the country. Therefore, the overall impression is misleading.
 

 (Third) Similarly, the letter is replete with statements that the offer is limited, both in terms of participants and in duration. Once again, without accurate disclosure of the manner in which the offer is limited the overall effect may be misleading. As the state points out in its reply brief; “If it were disclosed that the offer was in fact neither particularly selective nor limited, consumers would be considerably more likely to realize they were being solicited to purchase rather than otherwise obtain the benefits of the program.”
 

 (Fourth) In one of its sales letters, Columbia represents that the value of its offer is $450 or more; in the other, it is described as a “more than $500 benefit package.” Business and Professions Code section 17501 provides in pertinent part that “. .. the worth or value of any thing advertised is the prevailing market price,... at the time of publication of such advertisement in the locality wherein the advertisement is published.” An examination of the evidence provided by Columbia as to the value of the components of its offer, shows that the trial judge could reasonably infer that the total value of the offer was misrepresented under section 17501.
 

 (Fifth and Sixth) In the letters, Columbia describes the lodgings to be provided participants as “strictly first class” and “AAA recommended or members of a nationally recognized hotel organization.” Although Columbia argues that “first class” means only “good quality” as opposed to “inferior quality,” the trial court could reasonably have decided that
 
 *612
 
 the term generally means much more to the consuming public. Definitions of the term in dictionaries probably reflect the. more common understanding of the term: “the best, finest, or highest class, grade or rank”; “the most expensive and luxurious class of accommodations.” Furthermore, a declaration from a representative of AAA submitted by the state demonstrated that none of the hotels or motels participating in the vacation package was AAA approved. There was no evidence before the trial court as to whether the hotels and motels were members of a nationally recognized hotel organization.
 

 (Seventh) The evidence shows several restrictions and limitations upon purchasers of vacation certificates which were not disclosed in the initial sales letters. Several of the declarations which were submitted to the court by the State listed the additional terms and conditions which were not previously mentioned in the original promotional materials.
 

 (Eighth) Since the court determined that Columbia should be restrained from the activities described in the first seven paragraphs of the preliminary injunction (a-g), it properly restrained Columbia from accepting money sent as a result of the aforementioned activities.
 

 (Ninth and Tenth) Business and Professions Code section 17538 requires, in effect, that consumer goods and services ordered and paid for by mail be delivered within six weeks from the date of payment. The alternatives to delivery include sending an explanatory notice of delay, offering equivalent goods or services, or making a full refund within six weeks. Even assuming that Columbia is correct in arguing that the only thing it offers to consumers is the vacation certificate (not the package), the certificate or one of the alternatives listed above must be delivered to purchasers within six weeks under section 17538. Several of the declarations submitted by the state show that the vacation certificates were not received within six weeks from date of payment. Yet, none of these purchasers were given refunds or any of the other alternatives provided by section 17538. Columbia presented affidavits to the effect that delays were caused by consumer and Post Office errors. The trial court obviously chose to believe that Columbia was not completely free from fault in late deliveries or refunds. Furthermore, contrary to Columbia’s assertions that it is exempt from section 17538 under provisions of section 17538.3, subdivision (c), the vacation certificates do not qualify as “consumer goods or services, such as quarterly magazines, which by their nature are not ready for use or consumption until a future date and for that reason cannot be stocked at the time of order.”
 

 
 *613
 
 II
 

 The preliminary injunction is not so vague or ambiguous that it is void. In its brief to this court, Columbia discussed each paragraph in the injunction with great specificity. In most instances, Columbia displayed familiarity with which parts of its promotional materials and business practices the preliminary injunction was designed to restrain. In view of this familiarity, it is unreasonable for Columbia to now claim that because of vagueness or ambiguity it cannot identify which of its activities are enjoined. Furthermore, the fact that the terms of the injunction are sometimes broader than is necessary to restrain the precise act engaged in by Columbia does not make it void. For example, in paragraph (e) of the preliminary injunction, Columbia is enjoined from: “describing any goods or services, whether accommodations, meals, or other goods or services, as ‘first class’ unless such goods or services are equivalent to the highest quality of goods or services offered within the geographic area within which they are to be provided.”
 

 Although Columbia actually described only its motel accommodations as being “first class,” the broader language is necessary to prevent Columbia from violating the spirit of the injunction while technically complying with narrowly drawn terms. This reasoning applies to each paragraph in the preliminary injunction.
 

 Finally, Columbia cites
 
 Pitchess
 
 v.
 
 Superior Court, 2
 
 Cal.App.3d 644 [83 Cal.Rptr. 35], in support of its contention that the preliminary injunction is so vague and ambiguous that it is void. In that case, the court determined that a preliminary injunction forbidding petitioners from enforcing any laws with regard to “nude entertainment” was too broad, and that consequently “men of common intelligence must necessarily guess at its meaning and differ as to its application.”
 
 (Supra,
 
 at p. 651.) The preliminary injunction in this case does not suffer from such a defect. The language relates to the promotional activities and the business practices of Columbia, not to a relatively general activity that could occur any time, any place, and under any auspices. Since Columbia need not guess at the meaning and differ as to the application of the present preliminary injunction, the trial court did not exceed its power in granting it.
 

 
 *614
 
 III
 

 Appellant’s final contention is that the injunction constitutes an impermissible restriction upon their right of free speech under the First Amendment of the United States Constitution. In so arguing, Columbia relies on the United States Supreme Court decision of
 
 Bigelow
 
 v.
 
 Virginia,
 
 421 U.S. 809 [44 L.Ed.2d 600, 95 S.Ct. 2222], In
 
 Bigelow,
 
 the Supreme Court stated that “the existence of ‘commercial activity, in itself, is no justification for narrowing the protection of expression secured by the First Amendment.’”
 
 (Supra,
 
 at p. 818 [44 L.Ed.2d at p. 610].)
 

 The Supreme Court in
 
 Va. Pharmacy Bd.
 
 v.
 
 Va. Consumer Council,
 
 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817], dealt more explicitly with the type of problem found in the present case. In that case, consumers brought suit against the Virginia State Board of Pharmacy challenging the validity of a Virginia statute declaring it unprofessional conduct for a licensed pharmacist to advertise the prices of prescription drugs. The court held, inter alia; that the statutory ban on advertising prescription drug prices violated the First and Fourteenth Amendments. After reaching this specific decision, the court stated that “[s]ome forms of commercial speech regulation are surely permissible” and went on to give examples of state regulations
 
 not
 
 foreclosed by the case.
 
 (Supra,
 
 at p. 770 [48 L.Ed.2d at p. 363, 96 S.Ct. at p. 1830].) Among the examples given by the court, was the situation involving false or misleading advertising.
 

 In light of the foregoing Supreme Court decision and its discussion of state regulation of commercial advertising, the preliminary injunction in the present case is a reasonable regulation and therefore does not violate Columbia’s First Amendment rights.
 

 The order granting the preliminary injunction is affirmed.
 

 Rattigan, J., and Christian, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied June 2, 1977.
 

 [1]
 

 Although much of the evidence from both parties was presented in the form of declarations rather than affidavits, the effect is the same under Code of Civil Procedure section 2015.5. As Witkin states: “C.C.P. 2015.5 provides that whenever, under any law, rule or regulation, an affidavit or other sworn statement is required or permitted to support ‘any matter,’ such matter ‘may with like force and effect; be supported by an ‘unsworn statement, declaration, verification, or certificate.’ The declaration must give the date and place of execution within this State, and must be subscribed and ‘certified or declared’ to be true ‘under penalty of perjury.’ ”
 
 (2
 
 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 5, p. 1469.) The declarations in this case comply with the above requirements.