[Civ. No. 21098. Fourth Dist., Div. Two. Aug. 21, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
FOREST E. OLSON, INC., et al., Real Parties in Interest.

---

## COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, John D. Conley and Charles D. McFarland, Deputy District Attorneys, for Petitioner.

George Deukmejian, Attorney General, Herschel T. Elkins, Assistant Attorney General, Ronald A. Reiter and Michael R. Botwin, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Shelly Jay Shafron for Real Parties in Interest.

---

## OPINION

**TAMURA, J.**—The central issue in this original proceeding is whether the California statutes dealing with false and misleading advertising (Bus. & Prof. Code, § 17500 et seq.) and unfair competition (Bus. & Prof. Code, § 17200 et seq.) are violative of the First Amendment protection accorded to commercial speech.[1]

---

[1]Unless otherwise indicated all section references in this opinion are to the Business and Professions Code.

Section 17500 provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor

The district attorney brought an action in the name of the People against Forest E. Olson, Inc., and Coldwell, Banker & Company (defendants) to enjoin and recover civil penalties for the alleged dissemination of false and deceptive newspaper advertisements in violation of the two statutes. To the extent the complaint sought recovery of the statutory civil penalties, the trial court granted defendants' motion for summary judgment on the ground that imposition of penalties for negligent dissemination of false or misleading advertising violates the First and Fourteenth Amendments to the United States Constitution and article I, section 2 of the California Constitution and further that the provision authorizing imposition of a civil penalty not to exceed $2,500 for each violation is unconstitutional because it permits imposition of excessive fines. The district attorney filed a petition for a writ of mandate to have this court review and set aside the order granting the summary judgment. We issued an alternative writ and order to show cause.

The pertinent facts on which the motion for summary judgment was based may be summarized as follows:

In July 1974, defendant Forest E. Olson, Inc. began running a full page advertisement in several Southern California newspapers. The advertisement consisted of a list of 406 street addresses surrounding a box containing the following message: "SOLD IN 8 DAYS OR LESS in Orange and Riverside Counties. When you list your home with FOREST E. OLSON BE PREPARED TO MOVE FAST! Information from Forest E. Olson's Computer Center, 1/1/74 - 3/31/75" The same advertisement with the same message modified to say "IN 4 DAYS OR LESS" instead of "8 DAYS OR LESS" was run on at least four occasions during 1975.[2]

Also during 1975, Forest E. Olson aired a radio advertisement over 11 stations consisting of the following message played against a background of a male monotone voice reading a list of addresses from a computer readout so rapidly that the addresses could only be identified as property locations: "You are listening to the computer readout of homes sold by

punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both."

Section 17200 provides: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

[2]The advertisements appeared in the Los Angeles Times, the Orange County Register, the Anaheim Bulletin, and the Ventura Star Free Press.

Forest E. Olson Realtors in no more than eight days. . . . However, some people are skeptical so realizing this, Forest E. Olson, a Coldwell Banker Company, was reluctant to release this following computer readout . . . Each of these homes was sold by Forest E. Olson Realtors in no more than four days . . . Startling information? Yes. If you doubt the authenticity of this computer readout, consider this; if it weren't true, we couldn't say it. That's why we insist when you list your house for sale with Forest E. Olson, you'd better be prepared to move . . . fast."

Approximately 176 of the street addresses shown in the newspaper advertisements were of new tract houses, condominiums, and town houses for which Forest E. Olson, Inc. had exclusive sales contracts with builder developers. Although the sales contracts were executed long before the sales, a listing agreement bearing the date of sale was made out for each sale. The properties thus appeared to have been sold on the day they were listed. Additionally, approximately 10 of the addresses in the advertisement were outside of Orange and Riverside Counties and 51 houses on the list were not sold in either four or eight days.

Forest E. Olson, Inc. explained that the appearance of the new tract sales in the advertisement was the result of inadvertence; that the advertising department had requested the data processing department for a list of all property sold in four days or less and had relied upon a computer readout list furnished by data processing; that there had been no "formal vice presidential approval" or review of the advertisement by the company's legal department. In short, defendants maintained that the evidence showed at most an inadvertent oversight by different people in the organization with separate business functions and not an intentional misstatement or reckless disregard of the truth. Defendants conceded, however, that the evidence presented a factual issue as to whether there was negligent dissemination of false or misleading advertising.

Defendants filed a motion for summary judgment and for an order determining certain issues to be without substantial controversy. The thrust of the motion was that imposition of civil penalties for negligently disseminating false or misleading information in defendants' commercial advertisements would violate defendants' free speech rights guaranteed by the federal and state Constitutions; that civil penalties may be imposed only upon proof that the misstatements were made with knowledge of their falsity or in reckless disregard of the truth. Defendants

also contended that under sections 17536[3] and 17206[4] only one violation of section 17500 and of section 17200 can occur for running a false or misleading advertisement in a single edition of a newspaper and that since publication occurred only on eight occasions, the maximum liability for civil penalties would be $40,000.

The court granted defendants' motion, holding that section 17500 of the false advertising statute is facially unconstitutional because it permits recovery of civil penalties for negligently making false or misleading statements in an advertisement, that section 17200 of the unfair competition statute is unconstitutional as applied because it defines unlawful and unfair business practices to include a violation of section 17500 thereby permitting recovery of civil penalties under section 17206 for the negligent dissemination of false advertising, and that section 17536 is

---

[3]Section 17536 provides: "(a) Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

"(b) If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the State Treasurer. If brought by a district attorney or county counsel, the entire amount of penalty collected shall be paid to the treasurer of the county in which the judgment was entered. If brought by a city attorney or city prosecutor, one-half of the penalty shall be paid to the treasurer of the county and one-half to the city.

"(c) If the action is brought at the request of a board within the Department of Consumer Affairs, the court shall determine the reasonable expenses incurred by the board in the investigation and prosecution of the action.

"Before any penalty collected is paid out pursuant to subdivision (b), the amount of such reasonable expenses incurred by the board shall be paid to the State Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund the moneys shall be paid to the State Treasurer.

"As used in this subdivision, 'board' includes commission, bureau, division, and other similarly constituted agency.

"(d) As applied to the penalties for acts in violation of Section 17530, the remedies provided by this section and Section 17534 are mutually exclusive."

[4]Section 17206 provides: "Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney or any city attorney of a city having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city or city and county having a full-time city prosecutor in any court of competent jurisdiction. If brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the State General Fund. If brought by a district attorney, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered. If brought by a city attorney or city prosecutor, one-half of the penalty collected shall be paid to the treasurer of the city in which the judgment was entered, and one-half to the treasurer of the county in which the judgment was entered."

unconstitutional because it imposes excessive fines in violation of the First, Eighth and Fourteenth Amendments to the United States Constitution and article I, sections 2 and 17 of the California Constitution.

The court further ordered that should an appellate court hold section 17500 et seq. and section 17200 et seq. to be constitutional, civil penalties would be recoverable only on proof that defendants disseminated the advertisements with knowledge they were false or misleading or with reckless disregard for whether they were false or misleading. The court further ordered that there can be but one violation of section 17500 and section 17200 for each day the advertisement appeared in a single edition of a newspaper so that the maximum civil penalties recoverable by the People would be $40,000.[5]

---

[5]The following is the text of the order granting the motion for summary judgment:

"IT IS ORDERED that Defendant's Motion for Summary Judgment as to the Complaint on file herein is hereby granted because § 17500 et seq of the Business and Professions Code is void on its face and unconstitutional because said section violates the First and Fourteenth Amendments to the U.S. Constitution and Article I § 2 of the California Constitution.

"1. Section 17500 of the Business and Professions Code is unconstitutional because a civil monetary penalty may be levied against a person who negligently disseminates false or misleading information in an advertisement. It is the court's ruling that a false advertising statute (§ 17500) may constitutionally impose civil monetary penalties only if it is limited to situations where the advertiser knows the statements to be false or misleading or where the advertiser makes the statement with reckless disregard for whether or not the advertisement is false or misleading.

"2. Section 17536 of the California Business and Professions Code is unconstitutional on its face because it imposes an excessive fine in violation of the First, Eighth and Fourteenth Amendments to the United States Constitution and Article I Section 2 and Section 17 of the California State Constitution.

"3. Section 17200 of the California Business and Professions Code (formerly § 3369 of the California Civil Code) is unconstitutional as applied to the complaint in the instant case in that it defines an unlawful and unfair business practice to include a violation of Section 17500 of the Business and Professions Code, and because it imposes punishment by way of a civil monetary fine for the negligent publication of false or misleading advertising under the general definition of unfair competition.

"IT IS FURTHER ORDERED that should § 17500 of the Business and Professions Code be held constitutional by an appellate court and § 17200 of the Business and Professions Code (formerly § 3369 of the California Civil Code) be held by an appellate court to be constitutional as applied to the Complaint herein, this Court does hereby grant the following order to deem certain issues to be without controversy.

*"Issues Without Controversy*

"1. The First and Fourteenth Amendments to the United States Constitution and Article I § 2 of the Constitution of the State of California, as applied to Business and Professions Code § 17500 and § 17200 et seq (formerly § 3369 of the Civil Code et seq.), require Plaintiff to prove that Defendant disseminated the advertisements at issue with the knowledge that they were false or misleading or with reckless disregard for whether or not the advertisements were false or misleading, as a precondition to imposing any civil penalty. Proof by Plaintiff of a lack of the exercise of reasonable care by Defendants in

The pendency of a cross-complaint for damages for alleged violation of defendants' constitutional rights precluded entry of a judgment on the complaint in favor of defendants. ■■ ■■■■ Since an order granting summary judgment is nonappealable, the People seek its review by extraordinary writ.[6]

The People contend that the statutes as applied in the instant case do not offend the free speech guarantees of the United States Constitution or the state Constitution and that the trial court's order should be set aside in its entirety. Defendants respond that the trial court correctly interpreted, defined and applied the First Amendment protection extended to commercial speech and that the petition should therefore be denied. For reasons we shall explain, we have concluded that the statutes as applied in the case at bench do not abridge defendants' free speech rights and further that the trial court erred in its perception of the proper method of determining the number of statutory violations of sections 17500 and 17200 for the dissemination of a false or misleading advertisement

the publishing of false or misleading advertising is insufficient as a matter of law to support a monetary judgment for Plaintiff.

"2. A maximum of one violation of Business and Professions Code § 17500 and § 17200 (formerly § 3369 of the Civil Code) occurs when an advertisement appears in one day's edition of a newspaper, and as such, since a maximum of eight publications occurred, a maximum of $40,000 liability exists in the case at bar.

"Denial of Defense Motion for an Order<br>"Deeming an issue Without Controversy.

"The Court denied the defense motion to deem the following issue without controversy:

"3. Plaintiff must prove that the Defendant violated Business and Professions Code § 17500 and § 17200 (formerly § 3369 of the Civil Code) by clear and convincing evidence.

"4. This Court further finds that the issues presented by the Defendant's Motion for Summary Judgment are issues of First Impression in this state and that the court's ruling raises serious questions about the state's ability to curb false and misleading advertising. This Court believes that these issues should be determined by the appellate courts with all due dispatch because they are matters of widespread importance."

[6]Mandamus is an appropriate means of reviewing an otherwise nonappealable order of a trial court where the issue presented is one of law and it is in the public interest to have a prompt determination of the question presented. (*Brown* v. *Superior Court,* 5 Cal.3d 509, 514-515 [96 Cal.Rptr. 584, 487 P.2d 1224]; *Randone* v. *Appellate Department,* 5 Cal.3d 536, 542-543 [96 Cal.Rptr. 709, 488 P.2d 13]; *City of Huntington Beach* v. *Superior Court,* 78 Cal.App.3d 333, 339 [144 Cal.Rptr. 236].) The statutes whose validity have been brought into question by the trial court's order are the basic tools of the Attorney General and district attorneys in combating consumer fraud. Prompt resolution of the questions raised is therefore in the public interest. By issuing an alternative writ, we necessarily determined that the People have no other adequate remedy and that this is a proper case for the exercise of our original jurisdiction through the prerogative writ. (*People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *City of Huntington Beach* v. *Superior Court, supra,* 78 Cal.App.3d 333, 339.)

through newspapers. We have therefore concluded that a peremptory writ of mandate should issue commanding the trial court to vacate its order in its entirety.

I

Before addressing the issues presented, we briefly review the statutes in question.

Section 17500 is the major California legislation designed to protect consumers from false or deceptive advertising. It is derived from the 1915 version of the former Penal Code section 654a which in turn was based on the so-called "Printers' Ink Model Statute" drafted in 1911 at the behest of the advertising journal of the same name.[7] (Note, *The Regulation of Advertising* (1956) 56 Colum.L.Rev. 1019, 1058-1059; Note, *Enforcing California's False Advertising Law: A Guide to Adjudication* (1974) 25 Hastings L.J. 1105, 1106.) The "Printers' Ink Model" made it a misdemeanor to place before the public any advertisement containing "any assertion, representation or statement of fact which is untrue, deceptive or misleading"; proof of intent to deceive or knowledge of the improper character of the advertisement was not required. (Note, *supra,* 56 Colum.L.Rev. 1019, 1058, fn. 245, 1059.) The model statute made advertisers absolutely liable for what they said in the advertisement.

In adopting the "Printers' Ink Model" in California, the Legislature added the requirement that the false or misleading character of the advertisement either be known or in the exercise of reasonable care should have been known by the advertiser. (Stats. 1915, ch. 634, pp. 1252-1253.) Section 17500 continues to carry the same qualification; the section makes it unlawful for any person to disseminate any statement concerning the product or service advertised "which is untrue or misleading, *and which is known, or which by the exercise of reasonable care should be known,* to be untrue or misleading." (Italics supplied.)

The Attorney General, district attorneys, and certain other designated public legal officers are empowered to seek and obtain injunctive relief against violations of section 17500 (§ 17535) and section 17200 (§ 17203) and to recover civil penalties on behalf of the government in an amount not to exceed $2,500 for each violation of the false advertising statute (§ 17536) and for each violation of the unfair competition statute

---

[7]The "Printers' Ink Model," either in its original form or as modified, has been adopted in 44 states and the District of Columbia. (Note, *supra,* 25 Hastings L.J. 1105, 1106, fn. 9.)

(§ 17206). A violation of the false advertising statute is also made a misdemeanor. (§ 17500.)

Section 17536 providing civil penalties for violation of the false advertising statute was added in 1965 (Stats. 1965, ch. 827, p. 2419) because injunctions and misdemeanor prosecutions were found to be inadequate weapons with which to combat false advertising. (*People* v. *Superior Court (Jayhill Corp.)*, 9 Cal.3d 283, 288-289 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191]; Note, *supra*, 25 Hastings L.J. 1105, 1107-1108; Review of Selected 1965 Code Legislation (Cont.Ed.Bar 1965) p. 21.) Former Civil Code section 3370.1 (now § 17206) providing civil penalties for violation of the unfair competition statute was added in 1972. (Stats. 1972, ch. 1084, p. 2021.) As in the case of false advertising, the injunctive remedy was found to be an ineffective deterrent against violations of the unfair competition law. (*Review of Selected 1972 California Legislation*, 4 Pacific L.J. 335, 342.)

## II

In order to focus upon the precise First Amendment argument advanced by defendants, we make the following preliminary observations:

Defendants' advertisement was pure commercial speech and defendants do not contend otherwise; the advertisement did not editorialize on any political, cultural, social or other subject. Thus, we are not confronted with the difficult task of drawing a distinction between "talk for profit, and talk for other purposes" or of determining the degree of First Amendment protection which should be accorded speech embodying both qualities. (See Tribe, American Constitutional Law (1978) p. 656.) Further, defendants agree that the state has a compelling interest in protecting the public and business competitors from being victimized by false and deceptive advertising. "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." (*Vasquez* v. *Superior Court*, 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Fletcher* v. *Security Pacific National Bank*, 23 Cal.3d 442, 451 [153 Cal.Rptr. 28, 591 P.2d 51].) Defendants also concede that an injunction against dissemination of false and misleading commercial advertising does not offend First Amendment rights of the advertiser. (*People* v. *Columbia Research Corp.*, 71 Cal.App.3d 607, 614 [139 Cal.Rptr. 517], cert. den., 434 U.S. 904 [54 L.Ed.2d 191, 98 S.Ct. 302].)

█ Defendants' attack is upon the monetary sanctions authorized by section 17536 and section 17206 for negligently disseminating false or deceptive advertising. Their argument takes the following form: First, since commercial speech is protected by the First Amendment, regulation of such speech must be accomplished by the means least likely to inhibit the exercise of the protected right; that imposition of the civil sanctions authorized by the statutes would have a chilling effect on the exercise of the protected right; and that injunctive relief, civil action by defrauded consumers or injured competitors, class actions on behalf of victimized consumers, and enforcement of governmental rules and regulations, state and federal, pertaining to standards of business and professional practices provide adequate public and competitor protection against false or misleading advertising. Defendants therefore maintain that section 17500 is unconstitutional on its face and that section 17200 is unconstitutional as applied. It is further their position that should sections 17500 and 17200 be determined to be constitutional, civil penalties may only be imposed for dissemination of false advertising with knowledge of the improper character of the advertisement or in reckless disregard thereof.

█ Defendants' contentions assume that since commercial speech has been brought under the protective umbrella of the First Amendment, it is perforce entitled to the same degree of protection as noncommercial speech. However, the decisions of the United States Supreme Court extending First Amendment protection to commercial speech dispel any such assumption.

On the theory that societal interest in the free flow of commercial information is indispensable to the proper allocation of resources in a free enterprise system, the United States Supreme Court has in a series of recent decisions repudiated the notion expressed in *Valentine* v. *Chrestensen,* 316 U.S. 52 [86 L.Ed. 1262, 62 S.Ct. 920], that pure commercial speech is unprotected by the First Amendment (*Bates* v. *State Bar of Arizona,* 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691]; *Linmark Associates, Inc.* v. *Willingboro,* 431 U.S. 85 [52 L.Ed.2d 155, 97 S.Ct. 1614]; *Va. Pharmacy Bd.* v. *Va. Consumer Council,* 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]; *Bigelow* v. *Virginia,* 421 U.S. 809 [44 L.Ed.2d 600, 95 S.Ct. 2222]), and has held that advertising which "does 'no more than propose a commercial transaction' " is deemed an exercise of a First Amendment right (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 771, fn. 24 [48 L.Ed.2d 346, 364], quoting *Pittsburgh Press Co.* v. *Human Rel. Comm'n,* 413 U.S. 376, 385 [37 L.Ed.2d 669, 676-677, 93 S.Ct. 2553]). In extending First Amendment protection to commercial speech

in the seminal *Va. Pharmacy Bd.* case, however, the high court hastened to add that commercial speech is subject to reasonable state regulations and that among those which "are surely permissible" are restraints on false, deceptive or misleading advertising. (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 770-771 [48 L.Ed.2d 346, 363].) The court foresaw no First Amendment impediment to the exercise of the state's power to deal effectively with false or misleading commercial speech. "The First Amendment, as we construe it today," said the court, "does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." (*Id.,* at pp. 771-772 [48 L.Ed.2d at pp. 364-365]; accord *Friedman* v. *Rogers,* 440 U.S. 1, 10 [59 L.Ed.2d 100, 109-110, 99 S.Ct. 887, 893-894]; *Bates* v. *State Bar of Arizona, supra,* 433 U.S. 350, 383 [53 L.Ed.2d 810, 835].)

The Supreme Court has consistently emphasized that in rejecting the notion that commercial speech is unprotected, the court was not elevating commercial speech to the same level on the scale of First Amendment values it has accorded other types of speech and has cautioned that its decisions dealing with more traditional noncommercial speech are not to be automatically applied to commercial speech. (*Ohralik* v. *Ohio State Bar Assn.,* 436 U.S. 447, 462, fn. 20 [56 L.Ed.2d 444, 457-458, 98 S.Ct. 1912]; *Bates* v. *State Bar of Arizona, supra,* 433 U.S. 350, 380-381 [53 L.Ed.2d 810, 833-834]; *Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 771, fn. 24 [48 L.Ed.2d 346, 364].) Thus, in *Ohralik,* the court summarized its views concerning the degree of First Amendment protection it intended to extend to commercial speech: "In rejecting the notion that such [commercial] speech 'is wholly outside the protection of the First Amendment,' *Virginia Pharmacy* [425 U.S.] at 761 [48 L.Ed.2d 346, 96 S.Ct. 1817], we were careful not to hold 'that it is wholly undifferentiable from other forms' of speech. 425 U.S., at 771 n. 24 [48 L.Ed.2d 346, 96 S.Ct. 1817]. We have not discarded the 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. *Ibid.* To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." (*Id.,* at pp. 455-456 [56 L.Ed.2d at p. 453].)

The high court has justified the different degree of protection accorded commercial speech as compared to other varieties of speech on the "common-sense" difference between them. "The truth of commercial speech, for example, may be more easily verifiable by its disseminator than, let us say, news reporting or political commentary, in that ordinarily the advertiser seeks to disseminate information about a specific product or service that he himself provides and presumably knows more about than anyone else. Also, commercial speech may be more durable than other kinds. Since advertising is the *sine qua non* of commercial profits, there is little likelihood of its being chilled by proper regulation and foregone entirely.

"Attributes such as these, the greater objectivity and hardiness of commercial speech, may make it less necessary to tolerate inaccurate statements for fear of silencing the speaker. Compare *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), with *Dun & Bradstreet, Inc.* v. *Grove,* 404 U.S. 898 (1971). They may also make it appropriate to require that a commercial message appear in such a form, or include such additional information, warnings, and disclaimers, as are necessary to prevent its being deceptive. [Citations.] They may also make inapplicable the prohibition against prior restraints. [Citations.]" (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 772, fn. 24 [48 L.Ed.2d 346, 364].)

In Justice Stewart's concurring opinion in *Va. Pharmacy Bd.,* he emphasized the fact that the "advertiser's access to the truth about his product and its price substantially eliminates any danger that governmental regulation of false or misleading price or product advertising will chill accurate and nondeceptive commercial expression" and that therefore there is "little need to sanction 'some falsehood in order to protect speech that matters.' " (*Id.,* conc. opn. Stewart, J., pp. 777-778 [48 L.Ed.2d, p. 368].) Justice Stewart's view was echoed in *Bates* v. *State Bar of Arizona, supra,* 433 U.S. 350, where the court said: "Since the advertiser knows his product and has a commercial interest in its dissemination, we have little worry that regulation to assure truthfulness will discourage protected speech. [Citation.] And any concern that strict requirements for truthfulness will undesirably inhibit spontaneity seems inapplicable because commercial speech generally is calculated. Indeed, the public and private benefits from commercial speech derive from confidence in its accuracy and reliability. Thus, the leeway for untruthful or misleading expression that has been allowed in other contexts has little force in the commercial arena." (*Id.,* at p. 383 [53 L.Ed.2d at p. 835].)

We conclude that a state regulation providing for the imposition of civil monetary penalties for the negligent dissemination of untruthful or misleading advertising does not offend the First Amendment. If knowledge of falsity or reckless disregard of the truth were made an essential element of proof in order to invoke the sanction, difficulty of proof would frustrate the state's most effective weapon against consumer fraud. The injury to consumers victimized by false or deceptive advertising is no less when it results from negligence than when knowingly or recklessly made. The constitutional protection extended to commercial speech "does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 772 [48 L.Ed.2d 346, 365].) We hold that sections 17500 and 17200 are neither facially, nor as applied, violative of the First Amendment.

Although the trial judge ruled that the statutes in question violated the free speech clause of article I, section 2 of the California Constitution[8] as well as the First Amendment, defendants make no contention that commercial speech enjoys greater protection under the California Constitution than it does under the First Amendment. Our Supreme Court has in certain contexts declared the free speech clause of the California Constitution to be " 'more definitive and inclusive than the First Amendment' " (*Robins* v. *Pruneyard Shopping Center,* 23 Cal.3d 899, 908 [153 Cal.Rptr. 854, 592 P.2d 341], quoting *Wilson* v. *Superior Court,* 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116]), but there has been no pronouncement by our high court that the California Constitution affords pure commercial speech greater protection than that accorded by the First Amendment.

### III

The remaining issues concern the validity and interpretation of section 17536 and section 17206 providing for civil penalties of up to $2,500 for each violation of the respective statute.

The decision to provide for the imposition of a monetary sanction for a violation of a regulatory statute is a matter resting well within the discretion of the Legislature. A "state may impose reasonable penalties as a means of securing obedience to statutes validly enacted under the

---

[8]California Constitution, article I, section 2, provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

police power." (*Hale* v. *Morgan,* 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].) "Imposition of civil penalties has, increasingly in modern times, become a means by which legislatures implement statutory policy." (*Id.;* see *Developments in the Law—Corporate Crime: Regulating Corporate Behavior Through Criminal Sanctions* (1979) 92 Harv.L.Rev. 1227, 1369.)

■ The People contend that for the purpose of fixing the civil penalties recoverable under section 17536 and section 17206 the number of violations is to be determined by the number of persons to whom the misrepresentations were made, citing *People* v. *Superior Court (Jayhill Corp.), supra,* 9 Cal.3d 283, and *People* v. *Bestline Products, Inc.,* 61 Cal.App.3d 879 [132 Cal.Rptr. 767]. In the case of a false newspaper advertisement, it is urged that the circulation of the newspaper should be the measure of the number of violations.

The trial court ruled that the People's interpretation of section 17536 would render it facially unconstitutional as authorizing the imposition of excessive penalties. Accordingly, the court determined that if the statute is to be upheld, each appearance of an advertisement in a single edition of a newspaper can constitute but a single violation of section 17500 and of section 17200 for which a maximum penalty of $5,000 may be imposed. Since the advertisement appeared in newspapers on eight occasions, the court ruled that the maximum penalties recoverable would be $40,000. The People contend that the trial court's interpretation is in defiance of the rule established by *People* v. *Superior Court (Jayhill Corp.), supra,* 9 Cal.3d 283, and *People* v. *Bestline Products, Inc., supra,* 61 Cal.App.3d 879.

*People* v. *Superior Court (Jayhill Corp.), supra,* 9 Cal.3d 283, involved door-to-door solicitation by book sellers. The Attorney General contended that each misrepresentation constituted a separate violation subject to the maximum $2,500 penalty. The Supreme Court rejected the contention noting that since not less than 25 misrepresentations were alleged to have been made to each prospect, under the Attorney General's theory defendants could be liable for $62,500 for each person solicited. The court declared that "it is unreasonable to assume that the Legislature intended to impose a penalty of this magnitude for the solicitation of one potential customer. Rather, we believe the Legislature intended that the number of violations is to be determined by the number of persons to whom the misrepresentations were made, and not by the number of

separately identifiable misrepresentations involved. Thus, regardless of how many misrepresentations were allegedly made to any one potential customer, the penalty may not exceed $2,500 for each customer solicited by a defendant." (*Id.*, at p. 289.)[9]

*People* v. *Bestline Products, Inc., supra,* 61 Cal.App.3d 879, also relied upon by the People, involved false representations made in connection with a marketing scheme for the sale of household cleaning products. The court found that some 10,000 distributors attended meetings at which misrepresentations were made and that 3,000 of them responded by becoming distributors and paying $3,000 each for merchandise. The trial court imposed a civil penalty of $1 million against the corporate defendants and $500,000 against five individuals. On appeal, the reviewing court held that while the *Jayhill* court may not have intended to establish a test for determining the number of violations of section 17500 under all circumstances, it was not unreasonable to find the corporate defendants guilty of at least 3,000 violations and to impose a civil penalty of approximately $330 per violation. Considering the fact that the 3,000 victims paid the corporate defendants over $3,000 each for a total of $9 million, the court held that the penalty was entirely reasonable.

The People maintain that *Jayhill* stands for the proposition that the number of violations is to be determined by the number of persons to whom the representations were made so that the number of violations resulting from a false advertisement in a newspaper may theoretically be equated with the circulation of the paper. As the *Bestline Products* court indicated, it is unlikely that *Jayhill* intended to establish a test for determining the number of violations applicable to all situations. (*People* v. *Bestline Products, Inc., supra,* 61 Cal.App.3d 879, 923.) *Jayhill* certainly does not suggest use of the newspaper circulation as the number of violations for false advertising in a newspaper.

If the People's theory of determining the number of violations were applied in the case at bench, a false advertisement published in the Los Angeles Times which has a circulation in excess of 1 million could result in more than 1 million violations for each edition with a potential civil penalty in excess of $2.5 billion under each statute. In keeping with the observations of the Supreme Court in

---

[9]The "per victim" rather than a "per culpable statement" basis was also approved in *People* v. *Witzerman,* 29 Cal.App.3d 169, 180 [105 Cal.Rptr. 284], as the most reasonable interpretation of section 17536.

*People* v. *Superior Court (Jayhill Corp.)*, *supra*, 9 Cal.3d 283, 289, it is "unreasonable" to assume that the Legislature contemplated penalties of that magnitude for a false advertisement in a single edition of a newspaper. To so interpret the statute would render it violative of the due process prohibition against "oppressive" or "unreasonable" statutory penalties. (*Hale* v. *Morgan, supra*, 22 Cal.3d 388, 399.) Common sense tells us that every newspaper subscriber does not read all of the advertisements published in the paper and could hardly be termed "a person solicited" in the sense of one personally solicited by a door-to-door salesperson.

At the same time, however, we cannot agree with the trial court that dissemination of a false or deceptive advertisement through a single edition of a newspaper can constitute but one violation of each statute as a matter of law. We believe a reasonable interpretation of the statute in the context of a newspaper advertisement would be that a single publication constitutes a *minimum* of one violation with as many additional violations as there are persons who read the advertisement or who responded to the advertisement by purchasing the advertised product or service or by making inquiries concerning such product or service. Violations so calculated would be reasonably related to the gain or the opportunity for gain achieved by the dissemination of the untruthful or deceptive advertisement. While the method by which the number of violations may be proved is not before us, it would appear that it might well include expert testimony and circumstantial evidence. We do not see the difficulty of proof to be so onerous as to undermine the effectiveness of the civil monetary penalty as an enforcement tool.

The People say that in arguing that the number of violations could be based upon the circulation of the newspaper, it is not suggesting that the court must so calculate the number of violations but only that it is a theoretical possibility. It is urged that the court would in any event only be empowered to impose a reasonable penalty. The question before us, however, is not the reasonableness of the penalty imposed, but the interpretation to be placed on the term "each violation" in the context of a newspaper advertisement. Even under our interpretation of the statute, the trial court must manifestly act reasonably in light of all pertinent factors including the kind of misrepresentations or deceptions, whether they were intentionally made or the result of negligence, the circulation of the newspaper, the nature and extent of the public injury, and the size and wealth of the advertising enterprise.

## Disposition

Let a peremptory writ of mandate issue commanding the trial court to vacate its "Order granting defendants' motion for summary judgment and in the alternative determining issues without controversy" and to take further proceedings in the case consistent with the views herein expressed.

Gardner, P. J., and Morris, J., concurred.

A petition for a rehearing was denied September 5, 1979, and the petition of real parties in interest for a hearing by the Supreme Court was denied November 15, 1979.