TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 92-109 |
| of | : | |
| | : | NOVEMBER 10, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE CHARLES W. QUACKENBUSH, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. May a regional air pollution control district require employers to charge parking fees as a means of achieving average vehicle ridership goals for purposes of the California Clean Air Act of 1988?

2. May a regional air pollution control district impose civil penalties upon employers who fail to achieve average vehicle ridership goals?

CONCLUSIONS

1. A regional air pollution control district may not require employers to charge parking fees as a means of achieving average vehicle ridership goals for purposes of the California Clean Air Act of 1988.

2. A regional air pollution control district may impose administrative civil penalties of not more than $500 pursuant to its own rules and regulations and initiate judicial proceedings for imposition of civil penalties by a court upon an employer who fails to achieve average vehicle ridership goals mandated by lawful orders of the district, the achievement of which was within the reasonable control of the employer.

ANALYSIS

The Legislature has provided for the establishment of air quality control districts, including county, unified, regional, Bay Area, South Coast, Sacramento Metropolitan, and San Joaquin Valley districts. (Health and Saf. Code, §§ 40000-41133; 74 Ops.Cal.Atty.Gen. 196

(1991).)[1]  Among the general powers common to all such districts are the adoption and implementation of regulations to "[e]ncourage or require the use of ridesharing, vanpooling, flexible work hours, or other measures which reduce the number or length of vehicle trips" (§ 40716, subd. (a)(2)), and the adoption, implementation, and enforcement of "transportation control measures" including "any strategy to reduce vehicle trips, vehicle use, vehicle miles traveled, vehicle idling, or traffic congestion for the purpose of reducing motor vehicle emissions" (§ 40717, subds. (a), (g)). Sections 40716 and 40717 are part of the California Clean Air Act of 1988.  (Stats. 1988, ch. 1568.)

1. Parking Fees

The first inquiry is whether a district may require employers to charge parking fees as a means of achieving established "average vehicle ridership" goals.  In 74 Ops.Cal.Atty.Gen. 196, 200 (1991), we concluded that a district itself may not impose parking fees.  In our view, the distinction between the imposition of fees by a district, and the requirement by a district that such fees be charged by employers, is illusory insofar as the statutory basis for such orders is concerned. Accordingly, we conclude that district mandated parking fees charged by employers do not fall within the conferred powers of a district under the California Clean Air Act of 1988.

Administrative agencies have only those powers conferred upon them by statute, and an administrative act in excess of those powers is void.  (*Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103-104.)  We have recently so determined in regard to air pollution control districts (74 Ops.Cal.Atty.Gen., 196, 198 (1991)) and in connection with the power to impose fees (73 Ops.Cal.Atty.Gen. 229, 234-235 (1990)).  Of course, an agency's powers are not limited to those expressly granted in the legislation; rather, it is well settled that administrative officials "may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810; see also *Stackler* v. *Department of Motor Vehicles* (1980) 105 Cal.App.3d 240, 245.)

The doctrine of implied powers, however, is not without limitation.  As stated in *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 498:

"It cannot be invoked where the grant of express powers clearly excludes the exercise of others, or where the claimed power is incompatible with, or outside the scope of, the express power.  For a power to be justified under the doctrine, it must be essential to the declared objects and purposes of the enabling act--not simply convenient, but indispensable.  Any reasonable doubt concerning the existence of the power is to be resolved against the agency."

Sections 40716 and 40717 admittedly contain general language and broadly worded grants of power.  Thus, in the portions of those statutes above quoted, the phrases "or other measures which reduce the number or length of vehicle trips" and "any strategy to reduce vehicle trips" appear without apparent limitation.  If literally construed, such terms would authorize a district to impose a monetary increase in the price of fuel, in the cost of automotive parts and maintenance, as well as the cost of parking a vehicle, in order to achieve its intended legitimate objectives.  While the word "fee," or "fund," or "charge," or "price," or "cost," or any other such monetary reference is conspicuously absent, the issue to be resolved is whether the power of an administrative agency to

---

1.    All section references are to the Health and Safety Code unless otherwise indicated.

impose or to require the imposition of direct economic costs and incentives may be implied from such broad statutory terms.

In 74 Ops.Cal.Atty.Gen. 196, 198-199 (1991), we examined the provisions of certain concomitant federal legislation which refer expressly to "parking surcharge regulations."[2] It may be argued that sections 40716 and 40717 should be read in light of the federal Clean Air Act (42 U.S.C. §§ 7401-7642), and since the latter recognizes "parking surcharge regulations" as an appropriate method of reducing air pollution, state law should be similarly construed.

Such an argument is predicated upon the well established principle that a state statute which is patterned after federal legislation, based on the similarity of language and obvious identity of purpose, should be construed not independently but in conjunction with its federal counterpart. (*Social Workers' Union, Local 535 v. Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391; *Pearson v. State Social Welfare Board* (1960) 54 Cal.2d 184, 214; 64 Ops.Cal.Atty.Gen. 425, 433 (1981).)

On the contrary, the corollary of the interpretive precept appears more applicable here, i.e., the omission by the Legislature of a certain provision in the federal counterpart by implication negates an intent to embrace the federal terms in that respect. (See 64 Ops.Cal.Atty.Gen. 425, 434 (1981).)

In any event, the reference in the federal statute to "parking surcharge regulations" must be viewed in its context. Specifically, the federal law provides that each state shall have the primary responsibility for assuring air quality within its geographical area by submitting to the Environmental Protection Agency administrator an implementation plan which will specify the manner in which national primary and secondary ambient air quality standards will be achieved and maintained within each air quality control region within the state. (42 U.S.C. §§ 7407, 7410.) The implementation plan must include, inter alia, "enforceable emission limitations and other control measures, means, or techniques (including economic incentives such as fees, marketable permits, and auctions of emissions rights) . . . as may be necessary or appropriate to meet the applicable requirements of this chapter . . . ." (42 U.S.C. § 7410(a)(2).) The specific reference to "parking surcharge regulation" contains the following:

"No parking surcharge regulation may be required by the Administrator under paragraph (1) of this subsection as a part of an applicable implementation plan. All parking surcharge regulations previously required by the Administrator shall be void on June 22, 1974. This subparagraph shall not prevent the Administrator from approving parking surcharges if they are adopted and submitted by a State as part of an applicable implementation plan. The Administrator may not condition approval of any implementation plan submitted by a State on such plan's including a parking surcharge regulation." (42 U.S.C § 7410(c)(2)(B).)

Thus, parking surcharge regulations are recognized as an appropriate part of an applicable implementation plan, but are expressly excluded as a federal requirement for state plans.

---

2. The federal definition of a "parking surcharge regulation" is as follows:

"The term `parking surcharge regulation' means a regulation imposing or requiring the imposition of any tax, surcharge, fee, or other charge on parking spaces, or any other area used for the temporary storage of motor vehicles." (42 U.S.C. § 7410(c)(2)(D)(i).)

Considering the federal reference in this context, the inference is even more compelling that the Legislature did not intend by mere implication to adopt it. Consequently, authority under state law to require the imposition of parking fees may not be implied by virtue of a reference to such fees in the federal act.

Examining the internal provisions of state law, including the California Clean Air Act of 1988, it appears that where the Legislature intended to authorize the imposition of fees, it so provided expressly and specifically with respect to their amounts and uses. (See §§ 40500, 40506, 40510, 40510.7, 40511, 40512, 40522, 41081, 41512, 41512.5, 42311, 42311.2, 42311.5, 44220-44237.) From such statutory examples it may be perceived that the absence of any express provision indicates an intent not to confer authorization. (See *Safer v. Superior Court* (1975) 15 Cal.3d 230, 238; *Board of Trustees v. Judge* (1975) 50 Cal.App.3d 920, 927.)

Similarly, it has been stated that "where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted." (*Marsh v. Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891; accord *Fogarty v. Superior Court* (1981) 117 Cal.App.3d 316, 320; see also 67 Ops.Cal.Atty.Gen. 325, 329-330 (1984) [authority to "issue such rules and regulations as may be necessary to carry out the intent and purpose of this chapter," while broad and without reservation, did not authorize administrative award of back pay or attorneys' fees].)

Moreover, sections 40716 and 40717 do not stand in isolation, but rather in the context of a universal body and system of laws of which it is a part. In executing the particular statutory responsibilities imposed by sections 40716 and 40717, those charged with their administration must take cognizance of and effectuate, or at least refrain from acting in derogation of, other valid governmental policies. (See *Zabel v. Tabb* (5th Cir. 1970) 430 F.2d 199, 209; 73 Ops.Cal.Atty.Gen. 156, 163 (1990).)

In this regard, we note that the Legislature has exercised its constitutional authority to enact a general statutory scheme for the determination of the terms and conditions of employment in private industry. (See Cal. Const., art. XIV, § 1.) Section 923 of the Labor Code provides as follows:

"In the interpretation and application of this chapter, the public policy of this state is declared as follows: Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees."

This statute codifies the state's public policy in favor of the collective bargaining process and was intended to balance the industrial equation, so far as possible, by placing employer and employee on an equal basis. (*Service Employees Internat. Union v. Hollywood Park, Inc* (1983) 149 Cal.App.3d 745, 759.)

Similarly, the basic national labor policy is expressed in section 1 of the National Labor Relations Act (29 U.S.C. § 151) in part as follows:

"It is hereby declared to be the policy of the United States to . . . encourag[e] the practice and procedure of collective bargaining and [to] protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment . . . ."

In view of the expressed state and federal policies regulating the voluntary determination of employment terms and conditions, including parking privileges, it would not appear that the Legislature intended to authorize by mere implication a local public agency to directly impair employment relationships.[3/] On the contrary, the mere existence of such an integral, comprehensive, and specific system of laws regulating employment relationships is an indication that the provisions of another general statutory scheme were not intended to apply. (*Cf., O'Sullivan v. City and County of San Francisco* (1956) 145 Cal.App.2d 415, 418; 75 Ops.Cal.Atty.Gen. 1, 5 (1992).)

Finally, we have previously observed that numerous "administrative problems" would arise if the authority to impose parking fees were included in the general grants of powers conferred in sections 40716 and 40717. (74 Ops.Cal.Atty.Gen. 196, 200 (1991).) Again, the failure of the Legislature to provide any restrictions, standards, or safeguards respecting the fundamental decision to directly affect the economic relationship between employer and employee raises serious doubt concerning the Legislature's intent to authorize the fees in question. We do not believe that the Legislature intended to confer upon a district by mere implication the power to require parking fees charged by employers without prescribing standards defining, for example, the correlative interests between the goals to be accomplished and the effective operation of commerce and industry.

We expressly do not determine that such fees may not be authorized by appropriate legislation, but only that in view of the competing public policies discussed above, the imposition of such fees has not been authorized by mere implication. It is concluded that a district may not require employers to charge parking fees as a means of achieving average vehicle ridership goals for purposes of the California Clean Air Act of 1988.

2. Civil Penalties

The second inquiry is whether a district may impose civil penalties upon employers who fail to achieve average vehicle ridership goals.[4/] This question assumes, as do we, that the district has made a lawful order which is reasonable under the circumstances and within the reasonable control of the employer. (Cf. *Sunset Amusement Co. v. Board of Police Commissioners* (1972) 7 Cal.3d 64, 84.)

An average vehicle ridership goal may, for example, be included by a district as a legitimate transportation control measure in its attainment plan in a district with moderate air pollution (§ 40918, subd. (a)(3)), in a district with serious air pollution (§ 40919, subd. (a)(3)), or in a district with severe air pollution (§ 40920, subd. (a)(2)). (§ 40717, subd. (a).) A district might,

---

3. Another related public policy is embodied in the constitutional prohibition against the impairment of the obligation of contracts. (Cal. Const., art. I, § 9; U.S. Const., art. I, § 10.) While the prohibition against the impairment of contracts, including collective bargaining agreements, must be harmonized with the authority of a state to safeguard the vital interests of its people (*United States Trust Co. v. New Jersey* (1977) 431 U.S. 1, 15; 66 Ops.Cal.Atty.Gen. 418, 422 (1983)), it may be doubted that the Legislature conferred such power, *sub silentio*, upon a local public agency.

4. A place of employment is an indirect source of air pollution within the meaning of section 40716 (see 42 U.S.C. § 7410(a)(5)(C)) and clearly within the regulatory jurisdiction of the district in which it is located (42 U.S.C. § 7511a(d)(1)(B); cf. *Western Oil and Gas Assn. v. Orange County Air Poll. Cont. Dist.* (1975) 14 Cal.3d 411, 421; 56 Ops.Cal.Atty.Gen. 531 (1973)).

for example, as a transportation control measure within the reasonable control of the employer, order an employer to restrict its own parking facilities to vehicles carrying two or more employees.[5]

With respect to civil penalties being imposed by a district for failure to achieve average vehicle ridership goals, two inferences must be drawn at the outset. First, a "goal" in common parlance is an end toward which effort or ambition is directed. (Webster's New Internat. Dict. (3d ed. 1961) p. 972.) Thus, the failure to achieve a goal per se, cannot provide a basis for violation of an order. Hence, it will be assumed either that the order mandated the achievement of the "goal" or that the proposed civil penalty is based on the failure to make a reasonable effort or movement toward the goal.

Second, with one exception limited to a maximum administrative penalty of $500, a district itself does not, as we shall see, impose civil penalties. It will be assumed that the question has reference to the initiation of judicial proceedings by a district for the imposition of civil penalties by a court.

The Supreme Court has ruled that the "state may impose reasonable penalties as a means of securing obedience to statutes validly enacted under the police power" without violating due process principles. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398.) "There is no inhibition upon the state to impose such penalties for disregard of its police power as will insure prompt obedience to the requirements of such regulations." (*Shalz* v. *Union School Dist.* (1943) 58 Cal.2d 599, 606.) "Imposition of civil penalties has, increasingly in modern times, become a means by which legislatures implement statutory policy." (*Hale* v. *Morgan, supra,* 22 Cal.3d 388, 398; see *People ex rel. Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 42-44; *People* v. *Western Air Lines* (1954) 42 Cal.2d 621, 627-628; *People* v. *Superior Court (Olson)* (1979) 96 Cal.App.3d 181, 195-196; *State of California* v. *City and County of San Francisco* (1979) 94 Cal.App.3d 522, 531.)

Of course, an administrative agency may not impose a fine unless specifically so authorized by statute. (See Gov. Code, § 11145; *Harbor Comm'rs v. Redwood Co.* (1891) 88 Cal. 491, 493; Cf. 28 Ops.Cal.Atty.Gen. 210, 211 (1956).) Unlike the absence of authority to impose or to order the imposition of parking fees, however, the imposition of civil penalties for violation of a district order is expressly authorized and carefully constrained. Specifically, any person who violates an order, rule, or regulation of a district is liable for a civil penalty of not more than $1,000. (§ 42402, subd. (a).)[6]

With regard to any such penalty, three limitations are expressly observed. First, no such liability will accrue if the person accused of a violation alleges and establishes that the violation was caused by an act which was not the result of intentional or negligent conduct. (§ 42402, subd. (b).)

Second, the penalty must be assessed and recovered in a civil action brought in the name of the People of the State of California by the Attorney General, by a district attorney, or by an attorney for the district in which the violation occurred. (§ 42403.)

---

5. We are not asked to consider the effect of such an order upon conflicting provisions of a preexisting collective bargaining agreement.

6. We are not concerned here with the more serious civil penalties for negligent emission (§ 42402.1) or failure to take corrective action against a known emission (§ 42402.2).

Third, in determining the amount of the penalty, the court must take into consideration all relevant circumstances including, but not limited, to (a) the extent of harm caused by the violation, (b) the nature and persistence of the violation, (c) the length of time over which the violation occurred, (d) the frequency of past violations, (e) the record of maintenance, (f) the unproven or innovative nature of the control equipment, (g) any action taken to mitigate the violation, and (h) the financial burden to the defendant.  (§ 42403.)

Finally, the district itself may impose administrative civil penalties, not in excess of $500, for each violation of an order, rule, or regulation of the district, if the district board has adopted rules and regulations specifying procedures for the imposition and amounts of such penalties.  (§ 42402.5.)

It is concluded that a district may impose administrative civil penalties not in excess of $500 pursuant to its own rules and regulations and initiate judicial proceedings for the imposition of civil penalties by a court upon an employer who fails to achieve average vehicle ridership goals mandated by lawful orders of the district, the achievement of which was within the reasonable control of the employer.

\* \* \* \* \*