**TEXAS DEPARTMENT OF HUMAN
RESOURCES, et al., Appellants,**

v.

**TEXAS STATE EMPLOYEES UNION
CWA/AFL–CIO, et al., Appellees.**

No. 14400.

Court of Appeals of Texas,
Austin.

July 3, 1985.

Rehearing Denied Aug. 28, 1985.

Jim Mattox, Atty. Gen., and Michael H. Patterson, Asst. Atty. Gen., San Antonio, for appellants.

Joellen Snow, Snow & Whitworth, Houston, for appellees.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

POWERS, Justice. ,

The Texas Department of Human Resources, an agency of the State of Texas, appeals from a permanent injunction issued by the trial court in a suit brought by employees of the Department and a union, Texas State Employees Union— CWA/AFL–CIO, to which several of the employees belong.[1] We will reverse the judgment below, ordering that the injunction be dissolved and that the plaintiffs take nothing by their suit.

## THE CONTROVERSY

The plaintiffs sued the Department setting out five categories of official action alleged to be violative of the plaintiffs' rights under the federal and State constitutions, as well as certain federal and State statutes. All of the alleged violations arose in the context of the plaintiffs' employment relationship with the Department. Only one category of the original five is before us on appeal, namely that denominated in the plaintiffs' pleading as their "Third Claim for Relief." The claim pertains to certain aspects of the procedures prescribed by the Department for the initiation and resolution of employee grievances and complaints.

The procedures in question are set forth in a *Personnel Handbook* published by the Department. In that publication, a "complaint" is defined as *any* employee's

formal written expression of dissatisfaction with aspects of employment, working conditions, environment, relationships with supervisors and other employees, or policies or decisions of the department considered by the complainant to be inappropriate, harmful, or unfair.

An employee's complaint, under the regulations, may be determined in an informal proceeding by his immediate supervisor; or, it may be determined after investigation by a "review officer" employed by the De-

1. The plaintiffs below, and appellees here, are: Texas State Employees Union—CWA/AFL–CIO, Martha Scott, Maxine Allen, James Thomas, Maria Balderrama, Elva Cardenas, and Alberta Torres.

The defendants, appellants here, are the Texas Department of Human Resources and the members of the Texas Board of Human Resources, a component part of the Department. For convenience, we refer in the text to the Department alone.

The Texas Department of Human Resources is basically composed of three legislatively created parts: the Texas Board of Human Resources, the Commissioner of Human Resources, "and other officers and employees required to efficiently carry out the purposes" of Title 2 of Tex.Human Res.Code Ann. (1980 & Supp.1985). *Id.* § 21.001. The Board "is responsible for the adoption of policies and rules for the government of the department." *Id.* § 21.003(a). The Board is composed of three members appointed by the Governor with the advice and consent of the Senate. *Id.* § 21.003(b). The Commissioner "is the executive and administrative officer of the department," exercising "all rights, powers, and duties imposed or conferred by law on the department," save as they may be "specifically delegated by the board to the department's agents or employees." *Id.* § 21.004(a). He is "appointed by the board with the advice and consent of two-thirds of the membership of the senate and serves at the pleasure of the board." *Id.* § 21.004(b).

The Commissioner is specifically empowered to "employ personnel necessary for the administration of the department's duties" under the code. *Id.* § 21.005. The code contains several provisions dealing with Department employees. "The department may establish a merit system for its employees." *Id.* § 21.007. It may establish staff development plans for the technical and professional education of its employees and any such plan "must include a provision for granting paid educational leave to selected employees," the cost thereof being paid out of any federal and State funds "within the limits of appropriated funds." *Id.* § 21.008. Certain political activities are forbidden employees of the Department. *Id.* § 21.009.

partment. The particular mode of resolution is a matter of the complainant's choice.

A "grievance," on the other hand, may be brought only by employees who have "permanent merit status" in their employment; and the substance of the grievance is limited to an "adverse personnel action," which is defined to mean a "decrease in salary, demotion, suspension without pay, and/or termination." Such a grievance is determined by a Departmental "hearing officer" after notice and a hearing at which the employee and the Department "may present evidence and express their viewpoints concerning the adverse personnel action from which the grievance arose." The handbook provides that an employee, before he may initiate a "grievance" procedure, must "exhaust all avenues available to obtain a satisfactory resolution through informal measures with supervisors," as more particularly set out in the handbook.

Whether an employee's dispute with the Department involves a complaint or a grievance, he is entitled under the rules of the handbook to have the assistance of a "representative" of his choosing. The representative may act for the employee and assist him in the preparation and presentation of his complaint or grievance. The scope of the representative's work is not set out in detail beyond what we have mentioned here.

By necessary implication, the representative may be another employee of the Department, for the handbook provides as follows with regard to complaints:

All work time used by a [Department] employee serving as an employee representative in the presentation of the complaint must have prior supervisory approval and be charged to annual leave, compensatory leave, substitute leave or leave without pay. Travel and per diem will not be paid for employee representatives in preparation for, or presentation of complaints.

Similar restrictions as to leave time and expenses are imposed upon an employee-representative who assists in the prosecution of his co-employee's grievance. The work of an employee-representative is purely voluntary and not a part of his required departmental duties.

In the plaintiffs' "Third Claim for Relief," they allege that the restrictions imposed upon employee-representatives, in the matter of leave time and expenses, violate their constitutional and statutory rights.[2] In granting the plaintiffs' motion for summary judgment, with respect to this claim, the trial court awarded permanent injunctive relief by ordering that the Department "cease and desist" enforcement of such restrictions. Stated conversely, the trial court's injunction affirmatively requires that the Department compensate at their regular wage rates those employees who voluntarily choose to assist their co-employees as representatives; and, requires that a representatives' expenses, incurred in connection with the work, be paid by the Department. The judgment rests

**2.** The statutes invoked by the plaintiffs are discussed subsequently in the text of this opinion.

The constitutional provisions invoked by the plaintiffs provide as follows:

Amendment 1, U.S.Const.:

Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Amendment 14, U.S.Const.:

Section 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Tex. Const. Article I:

§ 8. Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press....

§ 27. The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance.

upon the trial court's determination that the Department's procedures

> deprive employees of [the Department] of their lawful right to represent coworkers in complaint and grievance proceedings while receiving their regular compensation from the State and receiving reimbursement for expenses incurred.

## THE PARTIES' CONTENTIONS ON APPEAL

### The State's Contentions

The State brings two points of error. In the first, the State contends that the trial court's injunction has the effect of requiring the Department to expend public funds in violation of several provisions found in Tex. Const.Ann., namely: art. III, § 51 ("The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual ... whatsoever," save that it may provide for grants to certain Confederate soldiers and sailors and their widows); art. XVI, § 6(a) ("No appropriation for private or individual purposes shall be made, unless authorized by this Constitution...."); art. III, § 44 ("The Legislature shall provide by law for the compensation of all [public servants] ... but shall not grant extra compensation to any ... servant ... nor grant, by appropriation or otherwise, any amount ... to any individual ... when the same shall not have been provided for by preexisting law ..."); and art. VIII, § 6 ("No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law ...").

In addition, under its first point of error, the State points out that the specific, antecedent appropriation in question here, made by the Legislature in the appropriation act for the current biennium, limits the amounts paid by the Department to its employees to compensation for work done in their "normally assigned duties." The State asserts this condition would be violated by the Department's obedience to the trial court's injunction.

The substance of the State's second point of error is stated succinctly in the opening sentence of its brief of the argument:

> Even if the Texas Department of Human Resources were not constitutionally prohibited from authorizing ... employee-representatives to function on agency time or at agency expense, there is no constitutional or legal requirement that the agency allow such activity.

That is to say, the State denies the existence of any constitutional or statutory right in the plaintiffs to furnish assistance to their co-employees as an employee-representative *on the terms ordered by the trial court.*

### The Plaintiffs' Contentions

The plaintiffs apparently concede that permitting employee-representatives their regular compensation for work done in that capacity during working hours, and requiring the State to pay their attendant expenses, amount to a State subsidy for that work in behalf of an employee having a complaint or grievance against the State. The plaintiffs contend, however, that such expenditures *are* manifestly in the public interest, and an important one at that, and therefore well within the scope of the provisions of the State Constitution advanced by the Department. This is suggested by the fact that the Department's former policy did not require that employee-representatives take leave time for their work and did allow payment of their expenses; and by the fact that the handbook is replete with instances where other employees (supervisors, hearings officers, review officers, and witnesses) do not labor under the same restrictions as to leave time and expenses when they participate in a grievance or complaint proceeding.

In reply to the State's second point of error, to the effect that the plaintiffs have no constitutional or statutory right to represent their co-employees, the plaintiffs raise the contention that such a right is implied as part of their constitutional right of "association" and a statutory right implicit in certain State statutes,

namely: Tex.Rev.Civ.Stat.Ann. arts. 5152, 5154c, 5154g, and 5207a (1971).[3]

## DISCUSSION AND HOLDINGS

The issues made by the parties' contentions are therefore quite narrow: (1) Do the plaintiffs possess a constitutional or statutory right to represent their co-employees in the complaint and grievance proceedings; and (2) do the plaintiffs possess a constitutional or statutory right to receive for such volunteer work their regular compensation and recoupment of their attendant expenses?[4] The first issue need not be decided, for the personnel handbook acknowledges that an employee of the Department may, with "prior supervisory approval," serve as an employee-representative. No complaint is made in reference to the condition of "prior supervisory approval." While the claim of a constitutional or statutory right *to represent* a co-employee is therefore not before us for decision, it is interwoven in the parties' argument about the second issue: Do the plaintiffs have a constitutional or statutory right to receive their regular compensation and attendant expenses for work as an employee-repre-

sentative? We shall, in our discussion, follow suit.

### *Are the Rights in Question Constitutional Rights?*

The plaintiffs contend they possess the constitutional right *to represent* their co-employees as employee-representative, without charging their work in that regard to leave time and with the right to receive their regular compensation as well as their attendant expenses. They contend for these as part of what they view as a constitutional right *to provide* such representation, secured by the First Amendment guarantee of freedom of association and by corollary provisions of the State Constitution. By way of argument, however, they raise as well the rights of Department employees to *receive* such representation on such conditions. If the policy conditions relative to leave time and non-payment of expenses are not removed, the plaintiffs contend, no employee will volunteer to serve as a representative, leaving unrepresented any ill-informed or inarticulate employee who will be thereby prejudiced in the presentation or preparation of his complaint or grievance. *His* right to *receive*

---

**3.** The constitutional right of "association" is, of course, not expressly enumerated as a right guaranteed or recognized in the federal Constitution, although it is sometimes written of as if it were. *See, e.g., NAACP v. Alabama,* 357 U.S. 449, 461, 463, 78 S.Ct. 1163, 1171, 1172, 2 L.Ed.2d 1488 (1958); *NAACP v. Button,* 371 U.S. 415, 429–430, 83 S.Ct. 328, 335–336, 9 L.Ed.2d 405 (1963). It is, more accurately, an *inference* from the express guarantees of the freedoms of speech, assembly, and petition, contained in the First Amendment. *NAACP v. Alabama, supra; Bates v. Little Rock,* 361 U.S. 516, 522–523, 80 S.Ct. 412, 416–417, 4 L.Ed.2d 480 (1960); *United Transportation Union v. Michigan,* 401 U.S. 576, 578–579, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); *Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). The term "freedom of association" is used in two senses: (1) as an element of personal liberty, referring to an individual's choice "to enter into and maintain certain intimate human relationships"; and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees,* —— U.S. ——, ——–——, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d

462 (1984). From the citations contained in *Roberts,* it would appear that the second category but not the first may arguably be involved in the present appeal. And, for purposes of the present appeal, we may assume that the right of "association" is a cognate of those constitutional rights referred to in Tex.Const.Ann. art. I, §§ 8 (freedom of speech) and 27 (right of assembly and petition for redress of grievances).

In the matter of public employees, the First Amendment permits some government abridgment of its employees' First Amendment rights, limited generally to that inferred from government's interest in the satisfactory performance of its employee's employment duties. *See, e.g., CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (political activity); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (freedom of expression).

**4.** There is in the appeal no issue concerning the Union's, as opposed to other organizations' or individuals', right to serve as a representative. Nor is there any issue of an employees' right to engage a licensed attorney to represent his interests. He may do so under the rules of the handbook.

representation will therefore be "meaningless." We will permit the *jus tertii* argument although it is plain that the trial court's injunction does not rest upon a theory involving the constitutional or statutory right of an employee to *receive* the assistance of an employee-representative; and, it is equally plain that no attempt was made in the trial court to define this class, and its rights, if any, are not determined herein.[5] *See San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Erie R. Co. v. Williams*, 233 U.S. 685, 34 S.Ct. 761, 58 L.Ed. 1155 (1914); Sedler, *Standing to Assert Constitutional Jus Tertii in the Supreme Court*, 71 Yale L.J. 599 (1962). It is obvious that the rights of such persons, whether constitutional or statutory in origin, are quite

---

5. The sole affidavit support for the plaintiffs' motion for summary judgment, on their "Third Claim for Relief," that is, their claim relative to employee-representatives' leave time and expenses, is found in the affidavit of Anna Elwood, attached to the plaintiffs' motion.

The affidavit reflects that Elwood is presently employed by the Texas State Employees Union as an "organizer," but that she had been employed by the Texas Department of Human Resources for some period of time before March 1981.

Elwood states that some employees of the Department, who are members of the union, serve as "stewards" appointed by the union "to represent [union] members at each [Department] location where members work." These stewards are, she states, trained "to represent coworkers in complaint and grievance proceedings." Elwood's affidavit then states her experience under the Department's rules concerning employee-representatives (The initials "TDHR" refer to the Department):

> In October of 1981, TDHR adopted a new official policy requiring these employee-representatives to take annual, compensatory, or substitute leave, or leave without pay when representing coworkers in complaint or grievance proceedings. Additionally, the policy requires that representatives pay their own travel expenses. Prior to October 1981, employee-representatives received their regular compensation and were allowed travel and per diem expenses when representing coworkers. The new TDHR policy has severely hampered the [Union] steward system within TDHR. TDHR employees receive minimal leave time, thus they are unlikely to use that leave representing coworkers rather than vacationing, taking care of sick children, etc. Nor do they make enough money to have extra to spend on travel expenses when representing coworkers. The result is that responsibility for representing employees in complaint and grievance proceedings has fallen completely on my shoulders. Because of the large number of [Union] members within TDHR, the numerous TDHR geographical locations, and the significant number of complaints and grievances, it is extremely difficult for me to be present with every TSEU member at every complaint and grievance proceeding.

> Since the new TDHR policy was established, I have represented more than thirty individual TDHR complainants, as well as handling several TDHR group complaints. The official TDHR policy on employee complaints states that except in unusual circumstances, a final response to employee complaints shall be provided within twenty working days. In my experience, TDHR has never complied with this time requirement, and, in fact, has on numerous occasions taken more than three months to respond to complaints. In one instance, TDHR waited eleven months to respond to a group complaint.

> In my opinion, the TDHR policy regarding employee representatives, and the TDHR practice of delaying more than twenty days to respond to complaints, severely restrict the right of TDHR employees to present grievances to their employer through a representative of their choosing.

No deposition transcripts or other summary-judgment "evidence" pertain to the plaintiffs' "Third Claim for Relief." There is, particularly, nothing which purports to define the class of Department employees that must necessarily go without the assistance of an employee-representative because of the leave-time restriction imposed by the Department and its refusal to reimburse the employee-representative for his expenses. Indeed, there is nothing in the summary-judgment "evidence" which directly establishes that some employees of the Department have been unable to obtain the services of an employee-representative owing to these restrictions. The best inference that may be drawn from the Elwood affidavit, in this regard, is that she may not personally be able to continue to supply such representation because "it is extremely difficult for [her] to be present with every [union] member at every complaint and grievance proceeding." One observes, of course, that her representation has been largely supplied to union members. Elwood does state her opinion that the restrictions "severely restrict the right of [Department] employees to present grievances to their employer through a representative of their choosing," but she does not purport to support this conclusion. The statement does *not* imply that such employees have therefore gone without representation entirely where that was desired by them in connection with their grievance or complaint.

different from those asserted by the plaintiffs and involve quite different considerations.

Indeed, we do not see the issue in the terms suggested by the plaintiffs. Here, the State concedes the right of the plaintiffs to represent their co-employees if the plaintiffs wish to do so. And the State itself imposes no affirmative burden or restriction in that regard, of which the plaintiffs complain, and the exercise of the plaintiffs' right in that regard is not subject to any penalty imposed by the State. The State simply refuses to subsidize the plaintiffs' exercise of the right so acknowledged, and any "burden," "restriction," or "penalty" has to consist in the State's negative *policy* decision in that regard.

■ The First Amendment, from which the asserted right of association derives, is not absolute in the sense that it must prevail in all circumstances over all competing claims. *See generally* Kramer, The Supreme Court and the First Amendment Right of Association, 33 L.Ed.2d 865 annot. (1973). The importance of the work done by an employee-representative, particularly in behalf of inarticulate or ill-informed co-employees, cannot be denigrated. But the importance of the work does not translate into a constitutional entitlement to *receive* such representation; *a fortiori*, it does not translate for that reason into a constitutional right to *provide* such representation on the terms mandated by the trial court's injunction. It is one thing to say that the State may not affirmatively act to interfere with one's freedom of association, thereby depriving one of a "liberty" interest guaranteed by the Fourteenth Amendment by incorporation of the First; it is quite another thing entirely to say that the State must subsidize one's exercise of his "liberty."

■ In many important and even crucial matters, there is no constitutional mandate that government supply the means necessary for the enjoyment of a right, even a constitutional right, although the government *may* as a matter of policy *elect* to give such assistance in some circumstances, making distinctions as to the recipients

upon grounds valid under the equal-protection clause of the Fourteenth Amendment. *See, e.g., Maher v. Roe,* 432 U.S. 464, 474–75, 97 S.Ct. 2376, 2382–2383, 53 L.Ed.2d 484 (1977) (one's constitutional right to an abortion does not imply a constitutional duty on the part of government to pay for the abortion with public funds); *Buckley v. Valeo,* 424 U.S. 1, 94–95, 96 S.Ct. 612, 670–671, 46 L.Ed.2d 659 (1976) (voter's right to voice his preference regarding representative government—his right of access to the election process—does not imply a constitutional duty in government to finance or subsidize the candidacy of a presidential nominee); *Norwood v. Harrison,* 413 U.S. 455, 462, 93 S.Ct. 2804, 2809, 37 L.Ed.2d 723 (1973) (while the State may not constitutionally prohibit the maintenance of private schools, this does not mean that the State must, as a matter of equal protection, finance private schools with State funds).

■ A person on trial in a criminal or "quasi-criminal" proceeding does, indeed, under the Sixth Amendment and as a matter of due process or fundamental fairness, have certain entitlements which the government must supply if he is unable to supply them from his own resources or is unable to obtain them from some other source. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (trial counsel); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (appellate counsel); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (transcript of trial proceedings); *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (bloodgrouping test in paternity action from which imprisonment may result on a finding of guilty); and, *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (psychiatric assistance in criminal prosecution). But even in those proceedings, government is not required to pay for a defendant's representation when "the burdens of paying for a criminal defense are, relatively speaking, great but not insurmountable." *San Antonio School District v. Rodriguez, supra,* 411 U.S. at 21, 93 S.Ct. at 1290. The same

distinction is drawn between those totally unable to pay a fine and those upon whom the fine may work a great hardship. *Id.* Similarly, there is no constitutional mandate that government subsidize one's representation in a purely civil proceeding and no constitutional mandate that assures anyone of welfare benefits or adequate housing. *Id.* at 33, 93 S.Ct. at 1296. These important aspects of life *may* be supplied by a legislature, as a matter of policy, to relieve hardship, but there is no constitutional mandate that they be so supplied. It remains a matter of legislative policy and not a matter of constitutional entitlement so long as the mandate of equal protection is observed; and it is not within the judicial province "to create substantive constitutional rights in the name of guaranteeing equal protection of the laws." *Id.*

What the plaintiffs here contend, in reality, is *not* that the Department or the Legislature has *deprived* them of a right to represent their co-employees. The right to do so is freely admitted by the State. The plaintiffs contend, rather, that the Department and Legislature have not gone far enough—those authorities *should* have provided for state subsidization of the employee-representative's work in order to make such representative *more effective or* "meaningful." Their contention may, indeed, be correct as a matter of policy; but the matter remains just that—a matter of legislative or administrative policy determined by non-judicial authorities placed in office by the democratic process for the specific purpose of making such policy decisions.

■ The policy settled upon by the State, acting through its Department, is not constitutionally invalid because the State might have gone farther than it did. And this is true with respect to the choice of the Department not to subsidize the voluntary work of employee-representatives while subsidizing, in effect, the non-voluntary work done in complaint and grievance proceedings by supervisors, review officers, hearings officers, and witnesses who devote working hours to such proceedings.

There is, in the case of an administrative regulation of the kind involved here, a presumption of constitutionality in where the agency drew the line; and, the line chosen must bear only a rational relationship to the agency's interest in the work of its employees. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896 (1937). We see such a relationship in the obvious difference between voluntary and involuntary involvement in the proceedings and in the agency's interest in the orderly performance of its employees' work, avoiding abuses by employees who would serve as representatives, and perhaps in other aspects of agency business. But the administrative considerations upon which the agency acted, in drawing the line where it did, are not even attacked here. Rather, the plaintiffs base their contentions *solely* upon a claim that they are absolutely entitled by constitutional mandate to the subsidization of their volunteer work as an employee-representative, so that *any* countervailing administrative considerations are simply irrelevant.

■ We conclude, however, that there is no constitutional mandate to that effect. While the Legislature or the Department may have gone farther than it did, and still have been within the limits of what the State Constitution permits, that they did not do so is not a violation of any constitutional mandate we have found. "A statute is not invalid under the Constitution because it might have gone farther than it did...." *Roschen v. Ward,* 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722 (1929). *See also San Antonio School District v. Rodriguez, supra; Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).

### Is the Right in Question a Statutory Right?

What then of the plaintiffs' alternative contention that the judgment of the trial court may be sustained because it rests upon a *statutory* mandate that the labors

of the employee-representative, performed during working hours, be subsidized by paying him his regular compensation, without the work being charged to leave time, and by paying his attendant expenses? May this be the source of the "lawful right" found by the trial court in its judgment?

■■■ The plaintiffs invite our attention to four State statutes, to which we shall refer by the article number given them in Tex.Rev.Civ.Stat.Ann. Article 5152 declares that

[i]t shall be lawful for any and all persons engaged in any kind of work or labor ... to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service in their respective pursuits and employments.

Article 5154c prohibits any government of the State or its political subdivisions to enter into collective bargaining contracts with a labor organization. In the portion relevant here, however, found in § 6 of the statute, it is provided that the provisions of the statute

shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike.

The word "representative," as used in this statute, is not limited to a representative furnished by a labor organization. *Sayre v. Mullins,* 681 S.W.2d 25 (Tex.1984). Article 5154g declares it to be a public policy of the State

that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization and that in the exercise of such rights all persons shall be free from threats, force, intimidation or coercion.

Finally, Article 5207a provides in its first section that

[t]he inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be denied or infringed by law, or by any organization of whatever nature.

It is upon the foregoing statutes that the plaintiffs make their contentions in this case.

■■■ Conceding that nothing in these statutes explicitly commands State subsidization of the employee-representative's work, the plaintiffs contend for that result by way of *inference* from the terms used therein. But, that being the case, the inference is impermissible if contrary to any constitutional provisions or any statute dealing with the subject.

■■■ We concede first that we believe the inference would not be contrary to Tex. Const.Ann. art. III, § 51 and art. XVI, § 6(a) prohibiting the expenditure of public funds for private purposes. If some employees of the Department are permitted by Department policy to work in the complaint and grievance procedures, without charging the time spent to their leave time, then we see little room for the abstraction that the employee-representative's time is not for a public purpose. The same conclusions may be drawn in regard to the State's invocation of the prohibition in Tex.Const. Ann. art. VIII, § 6, pertaining to specific appropriations, and art. III, § 44, pertaining to antecedent appropriations.

Moreover, these constitutional provisions must also be interpreted in light of the co-equal provisions of Tex.Const.Ann. art. III, § 51–a, authorizing the grant of welfare sums to, or expenditures in behalf of, certain classes of individuals enumerated therein. The payment of these sums to assist such persons is undoubtedly for a private purpose. But such payments are *constitutionally* authorized. From the various provisions of the Texas Human Resources Code, it is readily apparent that the Department was constituted by the Legislature for the very purpose of administering the payment of these sums in behalf of the indigent, children, and other individuals. Tex.Human Res.Code Ann. § 22.001,

*et seq.* (1980 & Supp.1985). The Department's work in this regard is a task of enormous proportions, as indicated by its current appropriation of approximately two billion dollars. It is also apparent that the Legislature could not itself administer the array of such programs, requiring literally thousands of individual determinations as well as many subsidiary legislative and administrative-policy decisions.

The Legislature has, therefore, delegated to the Department the power and responsibility of making such decisions. In that connection, the Legislature has expressly provided that the Board of Human Resources shall be "responsible for the adoption of policies and rules for the government of the department." *Id.* § 21.003. One instance of the Board's execution of its responsibilities is reflected in the Department's personnel handbook, containing the rules of which the plaintiffs complain. The plaintiffs do not, however, complain that the powers of policy and rule-making have been so delegated or exercised. Rather, they complain of the *choices* made in that regard by the Department's policy-making component. That is to say, the plaintiffs complain that the Department's choices are unwise.

Whether the Department acted wisely in that regard is not, however, a matter within the power of the judicial department to decide. The policies chosen by the duly authorized agency of the Legislature are within the agency's prerogatives, so long as its choices are constitutional. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Bullock v. Calvert,* 480 S.W.2d 367 (Tex.1972); *School Board of City of Marshall v. State,* 343 S.W.2d 247 (Tex.1961); *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699 (Tex.1959). The agency's policy choice is within constitutional limits because we have held earlier that neither the federal nor the State constitution requires that the employee-representative's work be subsidized by the State in the manner ordered by the trial court. We therefore find no statutory basis for the trial court's injunction.

It is perhaps useful to end our discussion with a decision involving statutory claims quite similar to those made by the plaintiffs herein. *In Bur. of Al., Tob. and Fire. v. Fed. Lab. Rel. Auth.,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), a federal employee who served as a negotiator for his union was denied reimbursement for travel expenses and denied per diem allowances in connection with his service as negotiator. A federal statute, 5 U.S.C.A. § 7131(a) (1980),[6] required that such employees be granted "official time" for the performance of their work as negotiators. There was, therefore, no question in the case about whether the employee's work must be charged to leave time—it could *not* be so charged under the mandate of the federal statute. Reasoning from the statutory requirement that he must be given "official time" for his work as a negotiator, the employee argued that this evidenced a congressional intent that he receive reimbursement for his travel expenses and the per diem allowances, for these were paid other employees when they performed regular work for the agency during "official time."

The Federal Labor Relations Authority agreed with the employee and concluded that the agency had committed an unfair labor practice in refusing to pay such travel expenses and a per diem allowance. The resulting agency order was, by the United States Court of Appeals, upheld and ordered enforced. On certiorari, the United States Supreme Court reversed, holding that federal agencies were not, by the

---

6. The statute provides:

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes ... during the time the employee otherwise would be in a duty status. The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.

terms of the pertinent statutes, required to pay such sums.

The Supreme Court acknowledged the pertinent statutory declaration that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C.A. § 7101(a) (1980). The Court emphasized, however, that the statutes in question, considered as a whole, implied a Congressional view that while working as a negotiator, a federal employee was not representing the government's interest but that of his union and its employees:

> As we have explained, neither Congress's declaration that collective bargaining is in the public interest nor its use of the term of art "official time" warrants the conclusion that employee negotiators are on "official business" of the government.

And while these statutes reflect that "Congress unquestionably intended to strengthen the position of federal unions and to make the collective-bargaining process a more effective instrument of the public interest," there is nothing in them which suggests that Congress intended to depart from the basic assumption that government-union bargaining proceeds "from contrary and to an extent antagonistic viewpoints and concepts of self-interest." 104 S.Ct. 449, quoting from *Labor Board v. Insurance Agents*, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960). Therefore, the Federal Labor Relations Authority, in requiring the agency to pay such expenses and allowances, in order to equalize the economic positions of the government and the union, had exceeded its authority and made a "major policy decision" that lay within the sole prerogative of the Congress. *Id.*

We have, of course, followed the same principles here, as set out in detail above. Nothing in the statutes raised by the plaintiffs evidences a legislative intent that the State subsidize the salary and expenses of an employee-representative, even if that be desirable in order to equalize the positions of the State and an employee who has a grievance or complaint against the State. The duly constituted agency, acting for the Legislature and within the agency's power, has not chosen to take that course. There is no constitutional mandate to the contrary. There the matter must rest insofar as the judicial department is concerned. Tex.Const.Ann. art. II, § 1 (1984); *City of San Antonio v. State ex rel. Criner*, 270 S.W.2d 460 (Tex.Civ.App.1954, writ ref'd).

We therefore reverse the judgment of the trial court, dissolve the injunction, and order that the plaintiffs take nothing.