[No. D040337. Fourth Dist., Div. One. Mar. 4, 2004.]

ASHLEIGH BRENTON, Plaintiff and Respondent, v.
METABOLIFE INTERNATIONAL, INC., Defendant and Appellant.

**COUNSEL**

Lewis, Brisbois, Bisgaard & Smith, R. Gaylord Smith and Jeffrey A. Miller for Defendant and Appellant.

Law Offices of Christopher E. Grell, Christopher E. Grell and Ian P. Dillon for Plaintiff and Respondent.

**OPINION**

**McDONALD, J.**—Plaintiff Ashleigh Brenton filed this action against defendant Metabolife International, Inc. (MII) alleging that Brenton used Metabolife 356 (the Product), a product manufactured and marketed by MII, in accordance with the instructions provided by MII, and that she suffered a psychotic

breakdown as the result of her use of the Product. MII appeals the order denying its motion to strike Brenton's complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1]

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

Brenton's complaint alleged she consumed the Product in accordance with the use instructions for a few months before she suffered a psychotic breakdown in June 2000, and that her injuries were caused by the effects of ingredients (including ephedrine) contained in the Product. Brenton pleaded causes of action for product liability, negligence, breach of express and implied warranty and fraud, and sought compensatory and punitive damages. She also alleged that MII's false advertising for and misbranding of the Product violated Business and Professions Code sections 17200 and 17500 and sought the remedies provided by those statutes.[2]

B. *The Anti-SLAPP Motion*

MII moved to strike the complaint under the anti-SLAPP statute. MII argued Brenton's complaint targeted MII's commercial speech, which can qualify for First Amendment protection (see generally *Va. Pharmacy Bd. v. Va. Consumer Council* (1976) 425 U.S. 748, 770 [48 L.Ed.2d 346, 96 S.Ct. 1817]; *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 493 [101 Cal.Rptr.2d 470, 12 P.3d 720]); MII noted that the complaint was replete with allegations referring to MII's labeling of and marketing for the Product, and each of the discrete causes of action contained at least one express or implied reference to this commercial speech. MII argued that because Brenton's causes of action arose out of protected speech, the burden shifted to Brenton to show a reasonable probability of success on the merits.

Brenton opposed the motion to strike, arguing that MII could not meet the threshold burden to show her claims were within the ambit of the anti-SLAPP statute because her claims were not based on conduct protected by the First Amendment. Brenton also asserted that, even if the court deemed some or all of her claims to be within the ambit of the anti-SLAPP statute, she could

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] For ease of reference, Brenton's causes of action for product liability, negligence, breach of express and implied warranty and fraud are denominated as her "individual claims," and her claim under Business and Professions Code sections 17200 and 17500 is denominated as her "unfair practices" claim.

show a reasonable probability of success on the merits.[3] The trial court denied MII's motion, and we affirm.[4]

## II

## THE ANTI-SLAPP STATUTE

The anti-SLAPP statute was enacted in 1992 for the purpose of providing an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims "arising from any act" of a defendant "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) To achieve this objective, the Legislature authorized the filing by a defendant of a special motion to strike those claims within 60 days after service of the complaint. (§ 425.16, subds. (b)(1), (f).) An anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity . . . . If the court finds that such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) The trial court's determination of each step is subject to de novo review on appeal. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].)

---

[3] Brenton's *probability of success* showing relied on numerous documents, including articles from medical publications drawing a connection between consumption of products containing ephedrine and adverse physical reactions, including psychotic episodes; medical texts showing risks to persons from ephedrine consumption; and deposition transcripts from doctors who testified in other cases to the linkage between the Product and health problems suffered by a consumer of the Product. The trial court sustained evidentiary objections to all of Brenton's evidence except one scientific study, and concluded the one remaining study was a sufficient evidentiary showing to support a finding of probable success on Brenton's claim for fraud and her Business and Professions Code sections 17200 and 17500 claim. MII's secondary argument—that Brenton's showing was insufficient to satisfy her burden of showing a reasonable probability of success on the merits—is moot because her individual claims do not arise out of protected conduct (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 868–869 [117 Cal.Rptr.2d 82]) and because recent statutory enactments have removed all of her claims from the ambit of section 425.16.

[4] The trial court denied the motion, reasoning that: (1) MII did not demonstrate the product liability, negligence, fraud, and breach of implied warranty claims arose out of conduct protected by the anti-SLAPP statute; and (2) although the express warranty claim and the unfair practices claim did arise out of protected conduct, Brenton had shown a reasonable probability of prevailing on the merits of those claims. Because we agree with the trial court's order, although not necessarily all of the rationales for the order, we affirm. (*Tippett v. Terich* (1995) 37 Cal.App.4th 1517, 1539 [44 Cal.Rptr.2d 862], disapproved on other grounds in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 171 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

## III

## ANALYSIS OF BRENTON'S INDIVIDUAL CLAIMS

### A. *Ambit of Section 425.16*

 The anti-SLAPP statute applies only to a "cause of action . . . arising from" acts in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue (§ 425.16, subd. (b)(1)), and it is the defendant's burden in an anti-SLAPP motion to initially show the suit is within the class of suits subject to a motion to strike under section 425.16. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 304 [106 Cal.Rptr.2d 906] (*Fox Searchlight*).) "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts [on] which the liability or defense is based.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).)

 The courts have struggled to refine the boundaries of a cause of action that arises from protected activity. In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], the court explained that "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether *the plaintiff's cause of action itself was based on an act in furtherance of* the defendant's right of petition or free speech." (Second italics added.) In *Navellier*, the court cautioned that the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra,* 29 Cal.4th at p. 92, original italics.) Accordingly, the "arising from" prong encompasses any action *based on* protected speech or petitioning activity as defined in the statute (*Id.* at pp. 89–95), regardless of whether the plaintiff's lawsuit was *intended* to chill (*Equilon, supra,* 29 Cal.4th at p. 58) or *actually* chilled (*Cotati, supra,* 29 Cal.4th at p. 75) the defendant's protected conduct.

### B. *Brenton's Individual Claims*

The specific issue presented here is a recurring one:[5] whether a claim for physical injury against a manufacturer allegedly caused by use of its product,

---

[5] The Legislature's adoption of section 425.17, subdivision (c) has effectively mooted this recurring problem insofar as *future* cases are governed by subdivision (c), and we also conclude below (see pt. IV.B., *post*) that section 425.17, subdivision (c) provides an independent basis for affirming the trial court's order as to Brenton's individual claims. However, we

asserting theories of liability sounding in tort, contract and strict liability, is within the ambit of the anti-SLAPP statute merely because the manufacturer also engaged in commercial speech to market that product. Although section 425.16, subdivision (e) specifies four categories of conduct that qualify for anti-SLAPP protection, MII's argument relies on only two of those categories: "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (subd. (e)(3)) and "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest" (subd. (e)(4)). MII asserts its labeling of and advertising for the Product constitute written statements made in a place open to the public in connection with an issue of public interest within the meaning of subdivision (e)(3), and there is widespread public interest in dietary supplements generally and in the Product in particular. MII also asserts that its labeling of and advertising for the Product are within the meaning of subdivision (e)(4) because labels and advertisements are commercial speech entitled to First Amendment protection and concern dietary supplements, an issue of public interest.

■ In *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181 [6 Cal.Rptr.3d 494], this court determined, on facts substantively indistinguishable from the facts of this case, that a claim against a manufacturer for personal injuries to a consumer caused by a defective product cannot be characterized as a claim premised on First Amendment protected speech or conduct by the manufacturer within the meaning of the anti-SLAPP statute. *Martinez* held that "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Id.* at p. 188, original italics.) *Martinez* concluded protected speech is not the gravamen or principal thrust of claims seeking recovery for personal injuries to a consumer caused by a defective product, even though commercial speech might be mentioned in the complaint, because such speech "is largely unrelated to and entirely distinct from the wrongful, injury-causing conduct . . . on which Plaintiffs' claims are premised." (*Ibid.*)

As in *Martinez*, the core of the wrongful injury-producing conduct alleged here is that MII manufactured and sold a defective product that caused

---

separately evaluate her individual claims without regard to section 425.17, subdivision (c) because, even if that provision cannot be applied to her claims because of retroactivity concerns or alleged constitutional infirmities in that statute, the trial court's order as to Brenton's individual claims was nevertheless proper without reference to section 425.17.

Brenton's physical injuries, and the theories pleaded here as to Brenton's individual claims mirror those considered in *Martinez*. Other than its disagreement with the decision in *Martinez*, MII articulates no principled reason that *Martinez* should not control our decision on the applicability of the anti-SLAPP statute to Brenton's individual claims. We adhere to *Martinez* and conclude Brenton's individual claims are not based on, and do not arise from, protected activity as defined by section 425.16, subdivision (e). Accordingly, the burden never shifted to Brenton to demonstrate a probability she would prevail on her individual claims, and the trial court correctly denied MII's anti-SLAPP motion as to Benton's individual claims.

IV

## ANALYSIS OF BRENTON'S UNFAIR PRACTICES CLAIM

Brenton's unfair practices claim stands on a significantly different footing from her individual claims. The gravamen of the wrongful, injury-producing conduct by MII on which her unfair practices claim is based is MII's commercial speech: allegedly MII's false advertising for and misbranding of the Product. However, assuming a claim alleging unfair business practices based on advertising and labeling would previously have qualified for section 425.16's procedural protections (compare *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568 [92 Cal.Rptr.2d 755] with *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 46–51 [134 Cal.Rptr.2d 420]), newly enacted section 425.17 applies to the present case and removes Brenton's unfair business practices claim from the operation of section 425.16.

### A. *Section 425.17*

The Legislature, based on its finding that there had been a "disturbing abuse of Section 425.16" (§ 425.17, subd. (a)), enacted section 425.17 to limit the application of section 425.16. Section 425.17, effective January 1, 2004, provides in part:

"(c) Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:

"(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services,

that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

"(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ."

Section 425.17, subdivision (c) appears to remove Brenton's unfair practices claim (as well as her individual claims) from the types of claims against which an anti-SLAPP motion can be filed. MII does not contest that application of subdivision (c) here would be fatal to its present anti-SLAPP motion. MII instead argues that (1) application of section 425.17 to this action would be an improper retroactive application of the statute, and (2) in any event, section 425.17 cannot be applicable because it is unconstitutional.

B. *The Retrospectivity Claim*

■ Absent an express declaration of retrospectivity or other clear indication that the Legislature intended retrospective application, a new statute is presumed to operate prospectively. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434].) Because neither the text of section 425.17 nor the legislative history contains an express indication that it was intended to have retrospective application, there is no basis to depart from the ordinary rule of construction that it was intended to operate prospectively. (*Tapia,* at p. 287.)

■ However, "[t]here remains the question of what the terms 'prospective' and 'retrospective' mean." (*Tapia v. Superior Court, supra,* 53 Cal.3d at p. 288.) The courts have broadly distinguished between *substantive* and *procedural* statutes to assess whether applying a new statute would have improper retrospective application, and have declined to interpret a statute as having retrospective application when doing so would "change the legal consequences of the parties' past conduct." (*Id.* at p. 289.) Accordingly, if a statutory change is *substantive* because it would impose new, additional or different liabilities based on past conduct, courts are loath to interpret it as having retrospective application. (*Id.* at pp. 290–291; see also *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 269 [128 L.Ed.2d 229, 114 S.Ct. 1483] [" 'every [statute that] takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective' "].)

■ In contrast to changed substantive statutes, applying changed procedural statutes to the conduct of existing litigation, even though the litigation involves an underlying dispute that arose from conduct occurring before the effective date of the new statute, involves no improper retrospective application because the statute addresses conduct in the future. "Such a statute ' "is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.["] ' [Citation.] For this reason, we have said that 'it is a misnomer to designate [such statutes] as having retrospective effect.' [Citation.]" (*Tapia v. Superior Court, supra,* 53 Cal.3d at p. 288.) As one court explained: " '[T]he presumption against retrospective construction does not apply to statutes relating merely to remedies and modes of procedure. [Citation.] . . . [P]rocedural changes "operate on existing causes of action and defenses, and it is a misnomer to designate them as having retrospective effect." [Citations.] In other words, procedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. [Citation.] In such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively.' " (*ARA Living Centers-Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1561 [23 Cal.Rptr.2d 224].)

■ It is the effect of the law, not its form or label, that is important for purposes of this analysis. (*Tapia v. Superior Court, supra,* 53 Cal.3d at p. 289; *Moore v. State Bd. of Control* (2003) 112 Cal.App.4th 371, 378 [5 Cal.Rptr.3d 116] [" '[I]t is not significant whether the statute is labeled substantive or procedural in nature.' [Citation.] Rather, what is determinative is the effect that application of the statute would have on substantive rights and liabilities."].) The issue is whether applying section 425.17 here would impose new, additional or different liabilities on MII based on MII's past conduct, or whether it merely regulates the conduct of ongoing litigation.

■ Section 425.17 is properly characterized as a procedural statute applicable to pending actions. In *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347 [42 Cal.Rptr.2d 464], the court applied *Tapia* to conclude section 425.16 could be invoked to strike a lawsuit filed before the effective date of the statute without implicating retrospectivity concerns, reasoning the anti-SLAPP statute is "merely . . . a procedural screening mechanism for determining whether a plaintiff can demonstrate sufficient facts . . . to permit the matter to go to a trier of fact." (*Robertson,* at p. 356.) Section 425.17 does nothing more than amend section 425.16 to except certain claims from applicability of the statutorily conferred remedy of the screening mechanism

provided by section 425.16; section 425.17 does not impose new, additional or different liabilities based on past conduct or deprive MII of any substantive defense to the action. ▮ Where, as here, the Legislature has conferred a remedy and withdraws it by amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions without triggering retrospectivity concerns (*Lemon v. Los Angeles T. Ry. Co.* (1940) 38 Cal.App.2d 659, 670–671 [102 P.2d 387]); "[as] a general rule, . . . a cause of action or remedy dependent on a statute falls with a repeal of the statute, even after the action thereon is pending, in the absence of a saving clause in the repealing statute. [Citations.] The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right . . . at any time." (*Callet v. Alioto* (1930) 210 Cal. 65, 67–68 [290 P. 438].) MII acknowledges the numerous cases holding that when a remedial statute is amended or repealed before a final judgment is entered in the pending action, the court will apply the law in force at the time of the decision. (*Lemon v. Los Angeles T. Ry. Co., supra,* 38 Cal.App.2d 659; *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 488–489 [6 Cal.Rptr.2d 60]; *South Coast Regional Com. v. Gordon* (1978) 84 Cal.App.3d 612, 619–620 [148 Cal.Rptr. 775]; *Chapman v. Farr* (1982) 132 Cal.App.3d 1021, 1023–1025 [183 Cal.Rptr. 606].) MII attempts to distinguish these cases because the statute on which it relied—section 425.16—was neither amended nor repealed; instead, new section 425.17 was added. ▮ However, the court in *Governing Board v. Mann* (1977) 18 Cal.3d 819 [135 Cal.Rptr. 526, 558 P.2d 1] recognized that a new statute (even one containing no reference to the existing statute) can effect a partial *repeal* of an existing statute. (*Id.* at p. 828 and fn. 7.) Section 425.17 *directly* refers to the statute it was designed to amend, and therefore MII's argument that the new legislation did not effect an amendment or partial repeal of section 425.16 is unconvincing.

The rationale of *Governing Board v. Mann, supra,* 18 Cal.3d 819, persuades us that section 425.17 applies to this pending case. In *Mann,* a school district filed a proceeding seeking a judicial determination that a teacher's marijuana conviction provided grounds for dismissal under the Education Code; the trial court ruled the teacher's conviction did constitute cause for dismissal under then-governing statutes, and entered a judgment declaring that the school district had the right to dismiss the teacher. The Supreme Court reversed because, even though the ruling may have been correct under the statutes in effect at the time of the trial court judgment, a new Health and Safety Code provision added during the pendency of the appeal prohibited the school from terminating the teacher based on the conviction. The Supreme Court observed that, even if the Education Code formerly provided statutory authority to dismiss the teacher based on his conviction, the new legislation repealed the statutory authority. *Mann* observed: "The school district's authority to dismiss

defendant rests solely on statutory grounds, and thus under the settled common law rule the repeal of the district's statutory authority necessarily defeats this action which was pending on appeal at the time the repeal became effective. As this court noted in *Southern Service Co., Ltd. v. Los Angeles* [(1940)] 15 Cal.2d 1, 12 [97 P.2d 963]: ' "If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered." ' " (*Mann, supra,* 18 Cal.3d at pp. 830–831.)

Paraphrasing *Mann*, MII's authority to seek dismissal under section 425.16 "rests solely on statutory grounds, and thus under the settled common law rule the repeal of the . . . statutory authority [by newly enacted section 425.17] necessarily defeats" the effort to invoke the statute to justify dismissal, "even if a [trial court] judgment has been entered and the cause is pending on appeal."

 MII argues that applying section 425.17 in this case *would* change the legal consequences of past conduct because its authorized past conduct—filing a section 425.16 motion at trial—would become unauthorized conduct.[6] However, the fact that a party acted in an authorized manner at the time he or she invoked the former version of a procedural or remedial statute at trial is no impediment to the appellate court applying the current version of that procedural or remedial statute when evaluating the appeal from the trial court's ruling. (*Governing Board v. Mann, supra,* 18 Cal.3d at pp. 829–831; *Chapman v. Farr, supra,* 132 Cal.App.3d at pp. 1024–1025 [collecting cases].)

Accordingly, the provisions of section 425.17, subdivision (c) properly apply to the present action and provide an independent basis for affirming the trial court's order denying MII's anti-SLAPP motion as to Brenton's individual claims and unfair practices claim. (*Tippett v. Terich, supra,* 37 Cal.App.4th at p. 1539.)

### C. *The Constitutional Issue*

MII asserts section 425.17, subdivision (c) cannot be applied to this or any other action because it is a regulation of or restriction on commercial speech

---

[6] MII also argues applying section 425.17 would retroactively deprive MII of its right to be free of meritless lawsuits. However, applying section 425.17 here does not eliminate that purported *right*, but only removes one procedural mechanism for enforcing that right and requires MII to enforce the right to be free of meritless lawsuits by other procedures or remedies. (Cf. *Jarrow Formulas, Inc. v. La Marche* (2003) 31 Cal.4th 728, 738 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

that must satisfy the strict scrutiny standard of *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557 [65 L.Ed.2d 341, 100 S.Ct. 2343]. From this predicate, MII argues section 425.17, subdivision (c) is unconstitutional under the First Amendment because it does not survive the *Central Hudson Gas* analysis.

MII's attempt to subject section 425.17, subdivision (c) to the *Central Hudson Gas* analysis is unpersuasive because that statute does not purport to regulate, restrict, condition or penalize MII's ability as a speaker to engage freely in commercial speech; it merely regulates or restricts MII's ability as a litigant to seek dismissal of certain lawsuits at a particular stage of the litigation. MII cites no authority holding a speaker has a First Amendment right to specialized procedural remedies against a private lawsuit seeking to impose liability for unprotected commercial speech,[7] and we are unaware of any case law holding there is a constitutional imperative that a legislature must make procedural screening devices available to preempt those private lawsuits. (Cf. *Watson v. Fair Political Practices Com.* (1990) 217 Cal.App.3d 1059, 1072 [266 Cal.Rptr. 408] ["so long as a legislative act is not aimed primarily at suppression of speech the failure 'to subsidize the exercise of [such] right does not infringe [that] right' "; accord, *Student Government v. Bd. of Tr. of Univ. of Mass.* (1st Cir. 1989) 868 F.2d 473, 479 ["although the government may not place obstacles in the path of the exercise of constitutionally protected activity, it need not remove obstacles not of its own creation"].) Because the legislative determination to withdraw the benefits conferred by section 425.16 from commercial speakers does not violate any protection embodied in the First Amendment (*Watson v. Fair Political Practices Com., supra,* 217 Cal.App.3d 1059; see also *Tex. Dept. of Human Resources v. Tex. St. Emp.* (Tex. 1985) 696 S.W.2d 164, 171 ["there is no constitutional mandate that government supply the means necessary for the enjoyment of a right, even a constitutional right, although the government *may* as a matter of policy *elect* to give such assistance in some circumstances, making distinctions as to the recipients upon grounds valid under the equal-protection clause of the Fourteenth Amendment"]), we need not test the validity of section 425.17, subdivision (c) under the *Central Hudson Gas* analysis.

---

[7] The cases that have considered analogous issues have held the First Amendment does not impede the state from awarding monetary or injunctive relief for claims asserting the defendant engaged in unprotected commercial speech. For example, in *People v. Superior Court (Olson)* (1979) 96 Cal.App.3d 181 [157 Cal.Rptr. 628], the court held that Business and Professions Code sections 17200 and 17500, permitting actions seeking monetary or injunctive relief for untruthful or misleading advertising, were valid under the First Amendment. (*Olson,* at pp. 190–195; accord, *Keimer v. Buena Vista Books, Inc.* (1999) 75 Cal.App.4th 1220, 1226–1231 [89 Cal.Rptr.2d 781].) ▮ Because a state may impose liability for false or misleading commercial speech without violating the First Amendment, the fact that MII is required to defend a claim under that statute on its merits offends no constitutional protection.

## DISPOSITION

The judgment is affirmed. Brenton shall recover her costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.